*557 OPINION OF THE COURT
Chief Judge Kaye.
Today, in Burgos v Aqueduct Realty Corp. (92 NY2d 544), the Court delineates the standard for establishing proximate cause in suits against landlords for negligently secured premises by tenants injured as a result of a third party’s criminal attack. This appeal, involving an attack on a tenant by someone known to be an intruder, differs from Burgos in several material respects, leading us to affirm the Appellate Division order, which itself affirmed the jury verdict in defendant’s favor.
On the afternoon of December 12, 1987, while waiting in the lobby of the apartment building where she resided, plaintiff was pushed into an elevator, robbed and sexually assaulted at knifepoint by a person acknowledged by defendant building owner to have been an intruder. The front door of the building was not equipped with a lock. Plaintiff’s mother, individually and on behalf of her daughter, sought damages for defendant’s negligent failure to provide the building with adequate security. In a special verdict, the jury found that defendant was negligent, but additionally found that defendant’s negligence was not a proximate cause of plaintiffs’ injuries. The Appellate Division affirmed, concluding that the verdict on proximate cause was supported by the evidence.
Plaintiffs claim that the trial court’s instruction overstated their burden of proof on causation and improperly instructed the jury on how it should view the testimony of interested witnesses. While plaintiffs (and the dissent) point to isolated statements they claim were improper, as we have innumerable times held the charge must be viewed as a whole to determine whether it adequately apprised the jury of the applicable legal standards. Viewing the charge in that light, we conclude that it correctly stated the law (see, Burgos v Aqueduct Realty Corp., 92 NY2d 544, supra).
Plaintiffs further contend that defendant’s obligation to implement reasonable security measures included the duty to warn of ongoing criminal activity in the area, and that it was error for the trial court to preclude them from proceeding on a duty to warn theory. When a public entity acts in a proprietary capacity as a landlord, it is held to the same duty as private landlords in providing security devices in the building (see, Miller v State of New York, 62 NY2d 506, 508). However, it remains immune from negligence claims arising out of governmental functions such as police protection unless a special re *558 lationship with a person creates a specific duty to protect, and that person relies on performance of that duty (id., at 510). Plaintiffs do not allege such a special relationship here. Since the duty to warn of ongoing criminal activity in an area involves the governmental function of allocation of police protection (see, Weiner v Metropolitan Transp. Auth., 55 NY2d 175, 182), plaintiffs were properly precluded from maintaining a duty to warn claim.
 Addressing the dissent, on this record no error of law was committed in admitting the testimony of Peter Smerick or Lakeshia Johnson.
Peter Smerick, who was qualified as an expert in criminal behavior analysis, testified that the minimal security afforded by a lock and intercom would not have deterred plaintiffs attacker, Ronnie Matthews. Smerick based his conclusion on Matthews’ conduct, verbal behavior, and use of a knife during his attacks on plaintiff and several other victims. Smerick also considered the serial nature of Matthews’ crimes. Whether expert testimony is admissible on a particular point is generally a mixed question of law and fact (see, Selkowitz v County of Nassau, 45 NY2d 97, 101-102). Thus, the “admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court, and review beyond the intermediate appellate level is generally unwarranted” (People v Cronin, 60 NY2d 430, 433; see also, People v Miller, 91 NY2d 372, 379). While this Court can, of course, review a trial court’s decision to admit expert testimony that constituted an abuse of discretion, there was no such abuse on the particular record before us.
First, contrary to the dissent, Smerick’s testimony did not shift the jury’s focus away from the issue of proximate cause. In order to demonstrate the proximate cause burden in a security premises case, a tenant victimized in a criminal attack must prove that the assailant was an intruder who gained access to the premises through a negligently maintained entrance (see, Burgos v Aqueduct Realty Corp., 92 NY2d 544, supra). Plaintiffs in this case, however, chose to introduce additional evidence regarding proximate cause, which in turn led to Smerick’s testimony rebutting this additional evidence.
While the dissent characterizes the testimony of plaintiffs’ security expert Professor Hair as pertaining to “the properties of a lock and the manner in which a lock serves to secure a given area,” Professor Hair in fact also testified that “criminals *559 are known. * * * to take crimes of opportunity. A crime of opportunity, for example, would be a criminal walking by and checking a door and finding no lock on it. Well, let’s go investigate, what are the opportunities to commit criminal acts, for example.” Detective Robert Fleming, who investigated the attack and was one of the officers who arrested Matthews, also testified on plaintiffs’ behalf that an unlocked door provides a person who is “immature and acts on impulse” with an opportunity to commit a crime. This testimony immediately followed plaintiffs’ reading into the record of a psychiatric report of Matthews stating that “¡h]is personality characteristics reflect a rather insecure and immature person who acts on impulse.” Finally, Dr. Robert Goldstein, a psychiatrist called by plaintiffs, testified that unlike a stalker, an impulsive person is one “who just at the spur of the moment gets an impulse or a thought, and acts it out without thinking about the consequences.”
The testimony plaintiffs offered about Matthews’ impulsiveness and insecurity, and his propensity to commit crimes of opportunity when presented with an unlocked door, furnished the occasion for defendant to offer Smerick’s contrary opinion that the presence of a lock would not have deterred Matthews from attacking plaintiff. The dissent disagrees that Smerick’s testimony rebutted that of Dr. Goldstein and Detective Fleming because only part of their testimony concerned whether a lock would have deterred Matthews, and because those witnesses were called by plaintiffs for other purposes. As the testimony quoted from the record demonstrates, however, in actual fact plaintiffs’ witnesses opened the door to Smerick’s contrary opinion, regardless of why those witnesses were called or what other topics their testimony covered.
Furthermore, while the dissent correctly notes that Smerick did not have formal training in psychology or the behavioral sciences, an expert may be qualified without specialized academic training through “[l]ong observation and actual experience” (Meiselman v Crown Hgts. Hosp., 285 NY 389, 398; see also, Caprara v Chrysler Corp., 52 NY2d 114, 121, rearg denied 52 NY2d 1073 [an expert’s competency can be derived just as well “from the real world of everyday use” as from a laboratory]). As this record demonstrates, although he had no academic degree in the behavioral sciences, Smerick’s skill, training, knowledge and experience were adequate to support an assumption that the opinion he rendered was reliable (see, Matott v Ward, 48 NY2d 455, 459).
*560 Finally, it was not an abuse of discretion for the trial court to admit the testimony of Lakeshia Johnson, another of Matthews’ victims. Johnson testified that at the time of the attack, the front door of her building had a working lock, but that Matthews was already in the lobby when she arrived there. The dissent argues, in effect, that Johnson’s testimony was irrelevant since Johnson and plaintiff lived in different buildings, and there was no evidence demonstrating how Matthews entered Johnson’s building. Determinations of relevancy rest largely in the discretion of the trial court (see, Radosh v Shipstad, 20 NY2d 504, 508, rearg denied 20 NY2d 969). Given the testimony adduced by plaintiffs regarding the effectiveness of locks and “crimes of opportunity,” we cannot say that the trial court abused its discretion as a matter of law in determining that Johnson’s testimony was relevant. Furthermore, any differences in the circumstances between Matthews’ attacks on plaintiff and Johnson were appropriate subjects for cross-examination and argument to the jury. Indeed, in summation plaintiffs’ counsel argued the relative strengths and weaknesses of the various witnesses.
Plaintiffs’ remaining contentions are without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.