[758 NYS2d 89]

STEEN MELBY, Appellant, v TOM DUFFY, Defendant, and TOWN OF BROOKHAVEN et al., Respondents.

Second Department, March 31, 2003

APPEARANCES OF COUNSEL

*Friedman & James, LLP*, New York City (*John P. James* of counsel), for appellant.

*Curtis, Vasile, Devine & McElhenny*, Merrick (*Michael J. Dorry* of counsel), for Town of Brookhaven, respondent.

*Robert J. Cimino, County Attorney*, Hauppauge (*Susan A. DeNatale* and *Thomas Luciano* of counsel), for County of Suffolk, respondent.

## OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether the defendants Town of Brookhaven (hereinafter the Town) and the County of Suffolk (hereinafter the County) are liable to the plaintiff for failing to warn him of a dangerous condition created by the defendant Tom Duffy. We find that there was no special relationship between the plaintiff and the Town and no special relationship between the plaintiff and the County. Therefore, no liability may be imposed.

Between 9:00 and 9:30 P.M. on May 27, 1997, the plaintiff was operating his boat off the coast of Blue Point near Blue Point Cove in Patchogue Bay, which is within Great South Bay. His face hit a rope suspended approximately 5½ feet above the water, causing personal injuries. The rope extended between two fish traps known as pound traps, which were owned and maintained by the defendant Tom Duffy, a commercial fisherman. Pound traps consist of nets attached to poles stuck in the bay bottom and extending above the water line. A rope runs along the top of the poles, permitting the nets to be pulled out of the water and hung over the line to dry in the wind.

The bottom of the bay where the accident occurred is owned by the Town. However, employees of both the County and the Town patrol the site. A county marine patrol officer acknowledged that it was common to see fish net systems in the bay during the 1997 season.

Similarly, according to the town bay constable, Michael L. Hamilton, the traps were a regular part of the bay landscape. Three to four weeks before the plaintiff's accident, the Town's Commissioner of Public Safety, Richard C. Friscia, learned of

an accident involving a jet skier who collided with one of Tom Duffy's traps at another location near Swan River. At Commissioner Friscia's direction, bay constable Hamilton advised Tom Duffy to take the top line down for safety reasons.

Subsequent to the instant accident, Commissioner Friscia, by letter dated June 3, 1997, directed Duffy to correct the problem caused by the "horizontal leader line" of his fish traps "immediately." On June 12, 1997, the Town commenced an action in the Supreme Court, Suffolk County, to enjoin Duffy from suspending line, rope, or wire between the poles of his fish traps. The injunction was granted without opposition.

Thereafter, the Town passed Local Law No. 11 (1997) of Town of Brookhaven prohibiting the use of pound nets in or on any areas owned by the Town. Duffy commenced an action to declare that law invalid.

By order dated September 24, 1998, the Supreme Court, Suffolk County (Henry, J.), held that the local law was invalid on the ground that regulation of fishing was preempted by the New York State Environmental Conservation Law. The Supreme Court further found that there was no evidence "of any substantial proprietary interest of the Town either (1) meant to be protected by the subject Local Law, or (2) infringed in fact by the presence of the poles." The propriety of that holding is not before us on this appeal.

In this action to recover damages for personal injuries, the plaintiff alleged that both the Town and the County were negligent, inter alia, by "causing, allowing and permitting the aforesaid incident to occur, in having actual and/or constructive notice of the dangerous and hazardous condition existing in Patchogue Bay, and failing and/or refusing to remedy said condition [and] in failing to warn the plaintiff and other lawful boaters in the Patchogue Bay of the dangerous condition."

After issue was joined, the County and the Town separately moved for summary judgment. The County argued that the complaint should be dismissed insofar as it is asserted against it on the grounds, inter alia, that the County had no duty to maintain the area where the accident occurred since that area was not owned by the County, and no special relationship existed between the plaintiff and the County. Similarly, the Town contended that there was no special relationship between the plaintiff and it. The Town further argued, among other things, that it was immune from liability as landowner pursuant to General Obligations Law § 9-103, which grants a qualified immunity to landowners who permit public access to

their property for the purpose of certain recreational activities such as boating. The plaintiff cross-moved for leave to amend his complaint to assert "willful or malicious failure to warn," which would not be protected by the qualified immunity set forth in General Obligations Law § 9-103.

The Supreme Court, in the order appealed from, granted the County's motion for summary judgment on the ground that it did not own the bay bottom and therefore had no duty to maintain it. With respect to the Town, which did in fact own the bay bottom, the Supreme Court found that General Obligations Law § 9-103 was inapplicable because the accident occurred on a navigable waterway open to the public as a matter of law. Nevertheless, the Supreme Court granted the Town summary judgment based upon a finding that the Town lacked the authority to regulate fishing in navigable waterways within its jurisdiction.

It is undisputed that the accident occurred in tidal waters owned by the Town. The Town's ownership rights are derived from land grants issued in the 17th century by the colonial governors of New York (*see Trustees of Town of Brookhaven v Smith,* 188 NY 74 [1907]; *Roe v Strong,* 107 NY 350 [1887]; *Trustees of Brookhaven v Strong,* 60 NY 56 [1875]). These land grants also confirmed the existence of a town under the name Brookhaven, and created a corporation under the name Freeholders and Commonalty of the Town of Brookhaven (*see Townsend v Trustees of Freeholders & Commonalty of Town of Brookhaven,* 97 App Div 316, 318-319).

By virtue of these land grants, the Town "was vested with the title to the lands under the waters of the bays and harbors included within [their] boundaries * * * as well as to the uplands not already the subject of private ownership" (*Roe v Strong, supra* at 358; *see Trustees of Brookhaven v Strong, supra*). It held title to the land under the water "in its corporate political capacity, and as the representative of the crown, or of the colonial government, to be administered for the public good" (*Trustees of Town of Brookhaven v Smith, supra* at 78). The effect of these land grants was confirmed by the first New York State Constitution (*see Sage v City of New York,* 154 NY 61, 82 [1897]).

As a general rule, navigable waters are subject to the sole jurisdiction and control of the State of New York (*see* Navigation Law § 30). However, the State Legislature has excluded "tidewaters bordering on and lying within the boundaries of Nassau and Suffolk counties" from the definition of navigable

waters of this state (Navigation Law § 2 [4]) to accommodate the colonial land grants which conferred ownership and control over tidal waterways to certain Long Island townships, including the Town of Brookhaven (*see Matter of Rottenberg v Edwards,* 103 AD2d 138, 140-141 [1984]). The statutory exemption contained in Navigation Law § 2 (4) has consistently been construed as authorizing the Counties of Nassau and Suffolk and their respective townships to legislate and control the use of such lands and waterways (*see Matter of Rottenberg v Edwards, supra* at 141). The Town, as successor to the title and rights of the English government, may do "all things that a government may do for the benefit of its people" (*People v Miller,* 235 App Div 226, 230 [1932], *affd* 260 NY 585 [1932]), and holds title "in trust for all the inhabitants as a public and governmental agency" (*Knapp v Fasbender,* 1 NY2d 212, 231 [1956]).

Accordingly, the Town, as sovereign, has governmental authority over such waterways within its territorial limits (*see Incorporated Vil. of Manorhaven v Ventura Yacht Servs.,* 166 AD2d 685 [1990]; *Grace v Town of N. Hempstead,* 166 App Div 844, 852 [1915], *affd* 220 NY 628 [1917]). The Town, as landowner, also has the right to exercise proprietary authority over its lands and waters (*see Knapp v Fasbender, supra* at 225).

The Town's rights over navigable waterways are "subject to the public right" of navigation (*Roe v Strong, supra* at 358) or "jus publicum" (*Tiffany v Town of Oyster Bay,* 234 NY 15, 20 [1922]). Further, the State retains the authority to regulate and control the right of fishing for migratory marine fish. Such fish, "because of their migratory character, are classed as ferae naturae" and remain the property of the State (*see People v Miller, supra* at 232; *Sloup v Town of Islip,* 78 Misc 2d 366, 367-368 [1974]). However, the Town retains the right to regulate the cultivation and harvesting of shellfish (*see Trustees of Brookhaven v Strong, supra; Sloup v Town of Islip, supra;* Town Law § 130 [18]). Although it is undisputed that Duffy's fish nets were for migratory fish, primarily eel and not shellfish, the Town's alleged liability in this case does not hinge on whether Duffy was fishing for migratory fish or shellfish.

In determining the scope of a municipality's liability as landowner, one must distinguish between activities performed in a proprietary capacity from those which have always been considered governmental in nature (*see Miller v State of New York,* 62 NY2d 506, 512 [1984]). Landowner liability may be imposed upon a municipality in the exercise of proprietary

functions (*see Balsam v Delma Eng'g Corp.*, 90 NY2d 966, 967 [1997]; *Miller v State of New York, supra* at 511-512). Such proprietary functions include operating parks and areas for recreational use or erecting improvements to "facilitate the transportation of the inhabitants in and about the community" (*see Knapp v Fasbender, supra* at 226).

It is well settled that a "municipality which extends to its citizens an invitation to enter and use recreational areas owes to those accepting that invitation a duty of reasonable and ordinary care against foreseeable dangers" (*Caldwell v Village of Is. Park*, 304 NY 268, 274 [1952]). When the State or a municipality exercises proprietary authority over lands owned by it, a duty arises to inspect and remove hazards or give warnings (*see Preston v State of New York*, 59 NY2d 997, 998 [1983]). However, as the Court of Appeals held in *Preston v State of New York* (*supra* at 998), "[m]ere ownership does not give rise to the duty, but inviting the public * * * there does."

In this case, there is no evidence that the Town exercised proprietary authority over the area where the accident occurred. The area was not part of a public park. Contrary to the plaintiff's contention, the fact that Patchogue Bay is open to the public did not render the bay a "public recreational facility." The area is open to the public for recreational and other uses by virtue of its status as a navigable waterway, subject to a public easement of navigation (*see Adirondack League Club v Sierra Club*, 92 NY2d 591 [1998]; *Douglaston Manor v Bahrakis*, 89 NY2d 472 [1997]).

Since the area is open to the public by operation of law, General Obligations Law § 9-103, which grants a qualified immunity to a landowner "who gives permission to another" to pursue recreational activities on its property, has no application here (*see Ferres v City of New Rochelle*, 68 NY2d 446 [1986]; *Bennett v Town of Brookhaven*, 233 AD2d 356 [1996]; *see generally Testani v Northshore Equestrian Ctr.*, 156 Misc 2d 1031 [1992]). As the Court of the Appeals held in *Ferres v City of New Rochelle* (*supra* at 451-452), "the sole purpose of General Obligations Law § 9-103 is evident—to induce property owners, who might otherwise be reluctant to do so for fear of liability, to permit persons to come on their property to pursue specified activities * * * It would be contrary to reason to assume that the Legislature could have intended that the statute apply in circumstances where neither the basic purpose of the statute, nor, indeed, any purpose could be served" as in the case of an area already open to the public (*see Bennett v Town of Brookhaven, supra*).

The law has long recognized the duty of a municipality to keep its public streets in a reasonably safe condition for travel as an exception to concepts of governmental immunity (*see Friedman v State of New York,* 67 NY2d 271, 283 [1986]; *Weiss v Fote,* 7 NY2d 579, 585 [1960]; *Annino v City of Utica,* 276 NY 192 [1937]; *Brusso v City of Buffalo,* 90 NY 679 [1882]). However, that obligation does not apply to a waterway open to the public by virtue of its status as a navigable waterway since "no duty, ordinarily, rests upon the municipality * * * to keep it in a safe condition, or free from obstructions, not of its own causing" (*O'Donnell v City of Syracuse,* 184 NY 1, 10-11 [1906]; *see Seaman v Mayor, Aldermen & Commonalty of City of N.Y.,* 80 NY 239 [1880]). The owner of a navigable waterway has no right to close it to the public (*see Douglaston Manor v Bahrakis, supra* at 480). The existence of "occasional natural obstructions," some of which could be deemed hazardous, does not destroy the right to the public to navigate (*see Adirondack League Club v Sierra Club, supra* at 607).

The authority exercised by the Town over the area where the accident occurred was governmental, not proprietary (*see Kilfoil v Town of Southold,* 211 AD2d 700, 701 [1995]; *Boyle v Tuthill,* 195 AD2d 532, 533 [1993]). Traffic regulation on land or water "is a classic example of a governmental function undertaken for the protection and safety of the public pursuant to the general police powers" (*Balsam v Delma Eng'g Corp., supra* at 968; *Kilfoil v Town of Southold, supra*).

The plaintiff's claims against both the Town and the County are based upon an alleged breach of a governmental duty to warn of a hazardous condition created by a third party. A duty to warn and a duty to cordon off a zone of danger created by a third party fall within the governmental function of providing adequate police protection to the general public (*see Price v New York City Hous. Auth.,* 92 NY2d 553, 558 [1998]; *Lorber v Town of Hamburg,* 225 AD2d 1062, 1063 [1996]; *Dutton v City of Olean,* 60 AD2d 335, 338 [1978], *affd* 47 NY2d 756 [1979]). A municipality "remains immune from negligence claims arising out of governmental functions such as police protection unless a special relationship" exists between the plaintiff and the municipality (*see Price v New York City Hous. Auth., supra* at 558; *Lorber v Town of Hamburg, supra* at 1063; *Dutton v City of Olean, supra*).

The elements of a special relationship are:

"(1) an assumption by the municipality, through

promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (*Cuffy v City of New York,* 69 NY2d 255, 260 [1987]).

In this case, there was no direct contact between the Town or the County and the plaintiff before the accident, and no evidence of an assumption of an affirmative duty to the plaintiff. In the absence of any indication of a special relationship between the plaintiff and the Town or the County, summary judgment was properly granted in their favor.

The plaintiff's remaining contention is without merit.

Accordingly, the order appealed from is affirmed.

Smith, J.P., FRIEDMANN and McGINITY, JJ., concur.

Ordered that the order is affirmed, with one bill of costs.