*794 OPINION OF THE COURT
Joseph J. Maltese, J.
The plaintiff has moved to set aside the jury verdict as being against the weight of the credible evidence. This court is now striking the opinion of the defendant insurance carrier’s expert and consequently sets the jury verdict aside.
The plaintiff, Nadzira Ficic, purchased a 1995 Cadillac automobile from a used car dealer for $35,000 in the beginning of 1997. Between February and May of 1997, the car was returned to the car dealer three times for various repairs, which included an electrical problem. On May 20, 1997 Vincent Ficic, the plaintiff’s brother, with her authorization, drove her automobile. Vincent Ficic, the only witness called on behalf of the plaintiff, testified that after picking up his uncle, Bari Ficic, who was seated in the front passenger seat, entered onto the Staten Island Expressway, a high speed public highway. When he was near the Victory Boulevard exit he noticed smoke coming from the front dashboard vents and pulled the Cadillac over on the shoulder of the expressway. Vincent Ficic claimed that he exited the vehicle and directed his Uncle Bari to get out of the car. Bari Ficic had difficulty opening the door, which was equipped with an electric door lock. He eventually got out of the vehicle as it burst into flames. At the trial, Vincent Ficic specifically denied having accidentally dropped a cigarette or a match within the vehicle prior to the fire and also claimed that neither he nor his uncle, Bari Ficic, were smoking in the vehicle. The New York City Fire Department responded to the scene of the fire and extinguished it.
Vincent Ficic told his sister, Nadzira, about the fire and she subsequently filed an insurance claim with her insurance carrier, the defendant, State Farm Fire & Casualty Company. State Farm refused to pay the claim on the total loss of the Cadillac, which the parties have stipulated to be valued at $34,000 at the time of loss. Nadzira Ficic eventually sued State Farm to recover the insurance proceeds. In that action (No. 1), State Farm asserted an affirmative defense of fraud (by arson) against the plaintiff owner Nadzira Ficic. In action No. 2, State Farm also sued Vincent Ficic, the driver, and Bari Ficic, the passenger, alleging that they both acted on behalf of Nadzira Ficic by intentionally burning the automobile and thereby facilitating her fraudulent claim for the insurance proceeds. Both cases were tried jointly.
*795 Plaintiffs Case
The plaintiffs burden of proof was to prove that she was the owner of the automobile who had an insurable interest in the vehicle which was destroyed in the fire. Those facts were undisputed. The plaintiff did not testify because she was out of the country with her husband visiting his mother who was terminally ill. However, since she was previously deposed, her live testimony was not necessary to prove that she had an insurance interest in the automobile and that she authorized her brother to drive it. Moreover, her insured automobile was destroyed by fire when she was not present.
The plaintiff thereby established a prima facie case by a preponderance of the credible evidence that she sustained a loss by fire which should have been compensated by State Farm.
Defendant’s Case
State Farm’s only witness at the joint trial was Anthony Mellusi, who referred to himself as a “consulting engineer,” who was employed by Allen Dakle & Co., Inc. Anthony Mellusi received a Bachelor of Science degree in “nuclear science” from the Maritime College of the State University of New York. The witness had neither a degree in engineering, nor was he a licenced professional engineer. However, his curriculum vitae listed that he had “federal licenses in engineering.” The nature of those licenses was never disclosed. He also testified that he attended a class in fire protection engineering at Polytechnic Institute of New York. He further testified that he grew up around cars because his father was an automobile mechanic with whom he worked for several years. Mr. Mellusi disclosed that he is a New York State motor vehicle inspector, who is authorized to inspect vehicles for emission levels and mechanical inspections, which are required on motor vehicles each year. He also testified that he attended courses offered by automobile manufacturers such as General Motors, Chrysler and Ford.
The plaintiffs counsel did not conduct a voir dire of Mr. Mellusi’s qualifications as an expert. Thus, without objection, Mr. Mellusi was permitted to give opinion testimony in the field of automobile mechanics and fire investigation. Mr. Mellusi inspected plaintiffs vehicle on June 4, 1997, two weeks after the fire. He took 13 photographs, which were admitted into evidence without objection.
Mr. Mellusi testified that he could not detect a point of origin or defect that caused the fire. When examining the fuse block, he made no analysis as to what fuses may have blown during *796 the fire sequence. He did not test any parts of the vehicle, and did not send any parts out for testing. He found no combustible material in the vehicle and could not say how the fire started or what materials were used to ignite the fire. Mr. Mellusi claims he never reviewed the New York City Fire Department report, which did not find arson. Furthermore, he could not rule out that the fire was caused “accidentally.” Most importantly, Mr. Mellusi did not state that the fire was intentionally set. He could go no further than to characterize the fire as “suspicious.”
According to Mr. Mellusi, there was no evidence of any electrical defects within the dashboard of the vehicle. There was no problem with any of the wiring that might have caused the fire. The fuel system was intact and was free of any leaks. Based upon an inspection of the burn patterns within the vehicle’s interior, Mr. Mellusi determined that the fire originated on the floor of the car, behind the driver’s seat.
Since Mr. Mellusi was present in court to testify as to his opinion, this court did not admit his written report into evidence for the jury. However, his report was received as a court’s exhibit and is consistent with his in-court testimony. The report stated in part:
“Inspection and examination of the vehicle’s fuel and electrical systems do not reveal any evidence of defects within same. Both systems were ruled out as being considered to be a contributing factor in the fire sequence.
“Based on the flame and burn pattern, it was determined that the fire had originated within the vehicle’s interior within the floor area directly in front of the left rear seat bench area. Based on the positioning of the point or origin of the fire, and the fact that all electrical components are ruled out as being considered a factor in the fire sequence, it is the writer’s opinion that the fire is considered to be suspicious in nature and is not the result of a defect within the vehicle itself.”
In his closing argument to the jury, the counsel for State Farm argued that, based upon Mr. Mellusi’s expert opinion, since the fire did not result from a defect in either the fuel line or the electrical system, and if one rules out an accidental cause—such as dropping a match or cigarette—“that leaves only one thing, that leaves arson.”
In an action such as this to enforce a contract of insurance coverage for a loss by fire, the plaintiff was not obligated to *797 prove the cause of the fire, and, consequently, did not call an expert to rebut Mr. Mellusi’s testimony. Accordingly, the jury heard no testimony to refute or question Mr. Mellusi’s opinion that the fire was “suspicious.” The sole question presented to the jury was: “Did the plaintiff have the fire intentionally started in order to damage her property for the purpose of recovering on the insurance policy?” A majority of five out of the six jurors answered “yes,” and thereby found in favor of the defendant, State Farm, in both cases.
Discussion
The issue in this posttrial motion is whether the evidence supports the verdict of the jury. More specifically, was the opinion of the defendant’s expert, that the fire was “suspicious,” a “generally accepted” opinion utilized by the fire investigative community and was that evidence sufficient to support the verdict of the jury? This court now answers that question and finds the opinion of the expert to be insufficient.
When deciding whether to set aside a verdict because it is not supported by sufficient evidence, the court must determine, as a matter of law, that there is “no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial.” (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978].) The plaintiff argues that the defendant has failed to meet its burden of proof at trial with respect to its affirmative defense, alleging that the loss resulted from an act committed by, or at the direction of, the plaintiff. “In an action to recover the proceeds of a fire insurance policy, it is the insurer’s burden to establish the affirmative defense of arson.” (Hutt v Lumbermens Mut. Cas. Co., 95 AD2d 255, 256 [2d Dept 1983].) In Hutt, a jury verdict in favor of the insurer was held to be against the weight of the evidence because, in seeking to support the arson defense, the insurance company produced an expert who concluded that the fire was incendiary in nature based on certain wall and floor burn patterns, but could not state unequivocally that a fire accelerant was used. An inference of arson must be “strong and almost inevitable.” (Id. at 257.) The Court noted that:
“To fasten upon a man the act of wilfully and maliciously setting fire to his own [property] should certainly require more evidence than to establish the fact of payment of a note, or the truth of an account in setoff; because the improbability or pre *798 sumption to be overcome in the one case is much stronger than it is in the other.” (Id.)
Clear and Convincing Evidence
The insurance company is required to demonstrate not by a mere “preponderance of evidence,” but by “clear and convincing evidence” that the plaintiff committed the act in question in order to prevail on a claim that the plaintiff intentionally caused or procured the setting of a fire (3910 Super K v Pennsylvania Lumbermens Mut. Ins. Co., 219 AD2d 589 [1995]; Van Nevius v Preferred Mut. Ins. Co., 280 AD2d 947 [4th Dept 2001]). Essential to this determination is an assessment that ensures “[t]his criterion is met only when the proof establishes a high probability that the fraudulent acts occurred.” (Chenango Mut. Ins. Co. v Charles, 235 AD2d 667, 668 [3d Dept 1997].)
The United States District Court for the Eastern District of New York in Harary v Allstate Ins. Co. (988 F Supp 93, 101-102 [ED NY 1997]) cited to the New York Supreme Court, Appellate Division, Second Department, which stated the
“[defendants, at trial, have the burden of presenting ‘clear and convincing evidence that the fire was incendiary [e.g., not accidental] in origin, and that the plaintiffs had a motive and the opportunity to commit the crime.’ 3910 Super K, Inc. v Pennsylvania Lumbermens Mutual Ins. Co., 219 AD2d 589 . . . (2nd Dept. 1995).”
Moreover, the Appellate Division, Second Department, has concluded that the expert’s testimony cannot be based on “pure conjecture and surmise.” (Schlegel v Aetna Cas. & Sur. Co., 282 AD2d 516, 517 [2d Dept 2001].)
Without a fact witness who observed the Ficics burning the automobile, the insurance company needs a competent expert witness or such other proofs to present clear and convincing evidence that will establish by a high probability that the Ficics set the automobile on fire. The purpose of an expert witness is to render an opinion which assists the judge or jury with information to determine a fact in issue concerning science, technology, or other specialized knowledge not ordinarily known by the triers of fact. While New York has not adopted the Federal Rules of Evidence, and specifically, rules 702 and 703, which govern the testimony of experts, those rules “to a large extent express the law now applied in the courts of New York” (see generally Barker and Alexander, Evidence in New York State and Federal Courts, ch 7, at 680 [West Group 2001]).
Expert witnesses must be qualified by their education, training, skill, experience, or knowledge. They should also give *799 opinions which are helpful and beyond the scope of ordinary knowledge of the jury. (Price v New York City Hous. Auth., 92 NY2d 553 [1998]; Matott v Ward, 48 NY2d 455 [1979].) Moreover, in New York courts, the expert should render opinions that are based upon science, technology, or other specialized knowledge which are based upon sound principles and methods generally accepted within the expert’s field or discipline.
The methodology employed by Mr. Mellusi, the expert for the defense, was a form of inductive reasoning to prove arson. Mr. Mellusi never prefaced his testimony with a statement that his opinion was to a “reasonable degree of engineering,” “fire safety certainty,” or even “probability” that the fire was intentionally, set. Indeed, the expert never testified to anything within a reasonable degree of certainty or probability.
The role of the trial judge as the ultimate gatekeeper of admissible testimony was affirmed by the Court of Appeals which held that:
“[T]he admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court. The role of the trial court is to determine when jurors are able to draw conclusions from the evidence based on their day-to-day experience, their common observation and their knowledge, and when they would be benefited by the specialized knowledge of an expert witness” (People v Brown, 97 NY2d 500, 505 [2002] [internal quotation marks omitted]).
Here, the defendant’s expert was equivocal in determining whether the fire was accidental or set intentionally. His opinion was based on conjecture and speculation. Furthermore, the defendant’s expert was not able to detect the point of origin or defect that caused the fire; he found no combustible material in the vehicle. Lastly, he could not say how the fire started or whether accelerants were used to ignite the fire. On cross-examination, the expert could not rule out that the fire was caused accidentally and he could not state that the fire was intentionally set. Based upon all the foregoing and the expert’s conclusion that the fire was “suspicious,” it is irrational for the jury to find by clear and convincing evidence, that is by a high degree of probability, that arson was perpetrated by the Ficics.
When Mr. Mellusi testified that the fire was “suspicious,” this court was skeptical about whether that was a proper opinion because it appeared to the court that suspicion should have *800 been the moving force of the investigation, rather than conclusory assertion.
There is no license for arson or fire investigators; however, there are organizations which certify arson and fire investigators after they take a prescribed number of courses offered either by an organization or by a college or university. While some colleges or universities offer a degree in “fire science,” the expert is neither a graduate of one, nor is he a graduate of an engineering school.
While the witness testified that he had taken a course in “fire protection engineering” at the Polytechnic Institute of New York, what that training consisted of was never disclosed. In this case, it was more relevant to the facts herein that the proffered expert was a member of the International Association of Arson Investigators (IAAI), which the expert included in his credentials and which is listed on his curriculum vitae. Indeed, the IAAI, like most professional organizations, maintains a Web site at www.firearson.com (cached at chttp:// www.courts.state.ny.us/reporter/webdocs/iaai.htm>), which states that the members of the IAAI utilize the National Fire Protection Association (NFPA) 921 Guide for Fire and Expíosion Investigations. The introduction to the NFPA 921 Guide states, “The NFPA codes, standards, recommended practices and guides . . . are developed through a concensus standards development process approved by the American National Standards Institute . . . .” A review of the text of the NFPA 921 Guide reveals in chapter 16 that:
“16.2 Classification of the Cause. The cause of a fire may be classified as accidental, natural, incendiary (arson), or undetermined. Use of the term suspiclous is not an accurate description of a fire cause. Mere suspicion is not an acceptable level of proof for making a determination of cause within the scope of this guide and should be avoided. Such fires should be classified as undetermined” (emphasis added).
Moreover, as to opinions which are issued by fire investigator&, the aforementioned text also states:
“16.7 Opinions. When forming opinions from hypotheses, about fires or explosions, the investiga- . OT should set standards for the degree of confidence , hose opinions. Use of the scientific method lc ates that any hypothesis formed from an analy *801 sis of the data collected in an investigation must stand the challenge of reasonable examination. (See Chapter 2.) [See Daubert v Merrell Dow Pharmaceuticals, Inc., 509 US 579 (1993).]
“Ultimately, the decision as to the level of confidence in data collected in the investigation or any hypothesis drawn from an analysis of the data rests with the investigator. The final opinion is only as good as the quality of the data used in reaching that opinion. If the confidence level of the opinion is only ‘possible’ or ‘suspected,’ the cause should be listed as undetermined” (emphasis added).
After reviewing this material, this court forwarded copies of the pertinent pages of the NFPA 921 Guide to both counsel and requested that they or their experts comment on them and to submit such comments by way of a supplemental affidavit on this posttrial motion. Asking counsel to comment on materials not originally presented, but uncovered by the court’s own research, is the prescribed method of allowing such information to be considered by the court.*
In response to the foregoing standards established by the IAAI that “suspicious” is not an accepted conclusion as to a cause of fire, the defense counsel in his affidavit merely stated that such material is dehors the record and was not considered by the jury and, therefore, should not be considered by this court in this posttrial motion. The defense chose not to have Mr. Mellusi or any other expert opine about the IAAI standards. Instead, the defense counsel presented a definition of the word “suspect,” which states: “[T]o think it probable or likely” (Webster’s New World Dictionary [3d ed 1998]). The defendant has avoided addressing this issue presented for comment and makes an argument that is not applicable here.
The plaintiff did submit an affidavit from a Dr. Angelo L. Pisani, Jr., a fire and explosion investigator certified by the National Association of Fire Investigators. In his affidavit, Dr. Pisani states that, like Mr. Mellusi, he too is a member of the International Association of Arson Investigators and that the NFPA 921 Guide for Fire and Explosion Investigations is indeed *802 the recognized guide and standards utilized by arson investigators and that the manual is endorsed and taught by those organizations. In addition, the guide is recognized as an authoritative manual in the field of fire and explosion investigations by the United States Bureau of Alcohol, Tobacco and Firearms, as well as other courts across the nation.
Dr. Pisani stated that Mr. Mellusi’s use of the term “suspicious” as the cause of the fire is not a recognized cause, and, consequently, it should have been listed as “undetermined.” Dr. Pisani finds fault with Mr. Mellusi’s testimony and method of conducting the investigation which this court need not address in this posttrial motion. Generally, the time to challenge the procedures or methods of an expert are before the trial in a Frye hearing, an in limine motion, or during the trial.
It was Mr. Mellusi’s membership in an organization such as the IAAI that gave him some of the necessary training to even hold himself out as an expert in the field of arson investigation. Therefore, he should comply with their training and their generally accepted published standards or he should have explained, when given the opportunity by this court, why they are not relevant. Mr. Mellusi’s conclusion that the fire was “suspicious” is not a recognized classification of a cause of a fire by his peer group. In fact, Mr. Mellusi’s conclusions are indeed undetermined, which does not satisfy the insurance carrier’s burden of proof by a high degree of probability.
Such an invalid and clearly erroneous expert opinion, not recognized by the expert’s peers, misled the jury into making an irrational decision that a suspicious fire is proof of an intentionally set fire. That conclusion is obviously not true and, consequently, this verdict cannot stand.
It is the role of the trial judge to preclude false expert testimony from reaching the jury. While it is certainly more efficient to do that before the expert witness testifies, on rare occasions the court must do so after such testimony by striking the testimony in order to preserve the integrity of the court system. The goal of such remedial action is to avoid rewarding those who, draped in the aura of expertise, are uninformed or reckless in their opinions or, worse yet, intentionally misled the jury away from finding the truth.
The expert’s conclusion that the fire was “suspicious” does not reach the “clear and convincing” burden of proof that, by a high degree of probability, the plaintiff had the fire intentionally *803 started in order to damage her property for the purpose of recovering on the insurance policy.
Accordingly, the opinion of the fire investigator, Anthony Mellusi, must be stricken and disregarded as being invalid and not reliable because that opinion is not based upon the generally accepted classifications for the causation of fire within the fire investigation community.
It is interesting to note that in the United States Supreme Court decision of Weisgram v Marley Co. (528 US 440 [2000]), Justice Ruth Bader Ginsburg, writing for an unanimous Court, reversed a jury verdict based upon a posttrial motion by the defense to set the verdict aside because the trial judge abused his discretion by allowing the plaintiff to present experts on the causation of a fire whose opinions were not reliable because they were not based upon sound methodology. Such invalid testimony resulted in an unreliable conclusion. In Weisgram, the United States Supreme Court not only reversed the trial court decision based upon an abuse of discretion, but also denied the plaintiff’s request for a remand to retry the case with perhaps a better expert. As the United States Supreme Court would not allow the Weisgram case to be retried, so too this court will not only strike the expert’s testimony as invalid and thereby unreliable, but will dismiss the defendant’s cause of action for lack of proof that the plaintiff, through her brother and/or uncle, intentionally set her automobile on fire in order to defraud the insurance company to collect the insurance proceeds.
Therefore, this court holds that there was no valid line of reasoning or permissible inferences which could have possibly led rational people to the conclusion reached by the jury in this case. As there was no other evidence contrary to the testimony of Vincent Ficic, this court will direct that a verdict be entered in favor of the plaintiff, Nadzira Ficic, against State Farm Fire & Casualty Company for the stipulated value of the car at the time of loss, to wit: $34,000.
Accordingly, it is hereby ordered that the judgment in favor of the defendant, State Farm Fire & Casualty Company, is vacated and the Clerk of the Court is directed to enter judgment in favor of the plaintiff, Nadzira Ficic, and against defendant, State Farm Fire & Casualty Company, in the amount ,qf $34,000, .together with interest from the date of this claim as allowable by law to be calculated by the Clerk, together *804 with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs in action No. 1 and that action No. 2 is hereby dismissed.

 See, George D. Marlow, From Black Robes to White Lab Coats: The Ethical Implications of a Judge’s Sua Sponte, Ex Parte Acquisition of Social and Other Scientific Evidence During the Decision Making Process (72 St. John’s L Rev 291 [1998]). The author, Justice George D. Marlow, now sits on the New York Supreme Court, Appellate Division, First Department, and also serves as the cochair of the New York State Judicial Ethics Advisory Panel.