■ ROBERT DOVIAK et al., Appellants, v FINKELSTEIN & PART-
NERS, LLP, et al., Respondents, et al., Defendant. [27 NYS3d
164]—

In an action, inter alia, to recover damages for legal
malpractice, the plaintiffs appeal (1) from an order of the
Supreme Court, Orange County (Ecker, J.), dated December 3,
2012, which, sua sponte, referred the eighth cause of action to
the Supreme Court, Ulster County, for determination, (2), as
limited by their brief, from so much of an order of the same
court dated February 15, 2013, as denied their motion for a
new trial on the first seven causes of action and for the entry of
a judgment in their favor on the eighth cause of action, and (3),
as limited by their brief, from so much of a judgment of the
same court, dated May 10, 2013, which, upon a jury verdict, is
in favor of the defendants Finkelstein & Partners, LLP, Andrew
G. Finkelstein, and Thomas C. Yatto and against them dismiss-
ing the first seven causes of action.

Ordered that on the Court's own motion, the notice of appeal
from the order dated December 3, 2012 is deemed to be an ap-
plication for leave to appeal, and leave to appeal is granted (see
CPLR 5701 [c]); and it is further,

Ordered that the order dated December 3, 2012 is affirmed;
and it is further,

Ordered that the appeal from so much of the order dated
February 15, 2013 as denied that branch of the plaintiffs' mo-
tion which was for a new trial on the first seven causes of ac-
tion is dismissed; and it is further,

Ordered that the order dated February 15, 2013 is affirmed
insofar as reviewed; and it is further,

Ordered that the judgment is affirmed insofar as appealed
from; and it is further,

Ordered that one bill of costs is awarded to the defendants
Finkelstein & Partners, LLP, Andrew G. Finkelstein, and
Thomas C. Yatto.

The appeal from so much of the order dated February 15,
2013 as denied that branch of the plaintiffs' motion which was
for a new trial on the first seven causes of action must be
dismissed because the right of direct appeal therefrom
terminated with the entry of judgment dismissing those causes
of action (see Matter of Aho, 39 NY2d 241, 248 [1976]). The is-
sues raised on the appeal from that portion of the order dated

February 15, 2013 are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

The defendants Andrew G. Finkelstein and Thomas C. Yatto, attorneys with the law firm Finkelstein & Partners, LLP (hereinafter collectively the defendants), represented the plaintiffs in an underlying personal injury action stemming from injuries that the plaintiff Robert Doviak (hereinafter Doviak) sustained when he fell from a height while working on the construction of a building for Lowe's Home Centers, Inc. (hereinafter Lowe's). Doviak and his wife, Zaytune Doviak (hereinafter Mrs. Doviak; hereinafter together the plaintiffs), engaged the defendants to represent them in the personal injury action against Lowe's and others (hereinafter collectively the personal injury defendants).

During the trial of the underlying injury action, the personal injury defendants extended settlement offers in the sums of $4 million, $8 million, $9.25 million, and $10 million, respectively, each of which the plaintiffs declined upon the defendants' advice. On the evening after the parties had rested, and prior to summations, the personal injury defendants extended a written settlement offer in the sum of $12 million, along with a structured settlement plan which would yield greater sums if invested as proposed (hereinafter the $12 million offer).

Yatto, who represented the plaintiffs at trial, testified that he communicated the $12 million offer to the plaintiffs and handed Mrs. Doviak the written document containing the offer (hereinafter the offer document) to review but that, the following morning, Mrs. Doviak explicitly rejected the $12 million offer and handed the offer document back to him. The plaintiffs, on the other hand, testified that they were never informed of the $12 million offer and that, had they been informed of it, they would have accepted it.

The jury in the personal injury action returned a verdict in favor of the plaintiffs in the sum of approximately $3.7 million. The defendants successfully sought additur from the Supreme Court, Ulster County, which increased the verdict to the sum of approximately $6.8 million. In November 2007, after the successful additur motion, the plaintiffs discharged the defendants and engaged successor counsel. Successor counsel obtained further additur from the Appellate Division, Third Department, for a total verdict in the sum of approximately $9.3 million (*see Doviak v Lowe's Home Ctrs., Inc.*, 63 AD3d 1348 [2009]).

The plaintiffs thereafter commenced this action against the

defendants, alleging, inter alia, that the defendants committed legal malpractice by failing to communicate the $12 million offer to them. The plaintiffs also alleged a variety of other legal errors and sought, inter alia, a finding that they had discharged the defendants for cause and that, accordingly, the defendants were not entitled to recover fees in the personal injury action.

During Mrs. Doviak's deposition in this action, the defendants' counsel handed her the original offer document. The plaintiffs subsequently moved to impose sanctions on the defendants on the ground that the defendants had failed to preserve the offer document for fingerprint analysis and had made such analysis impossible. The plaintiffs maintained that, had the offer document been analyzed, it would have revealed that Mrs. Doviak's fingerprints were not on it and, therefore, would have been evidence that the defendants had not delivered the $12 million offer to them. The Supreme Court denied the plaintiffs' motion.

In an order dated December 3, 2012, the court, sua sponte, referred the eighth cause of action, seeking a declaration that the defendants were discharged for cause and were, therefore not entitled to recover fees, to the Supreme Court, Ulster County, so that the issues presented in that cause of action could be resolved in the context of the entry of the final judgment in the underlying action.

During the trial, the plaintiffs sought to present the testimony of two expert witnesses. Following hearings regarding each of the proposed experts, the Supreme Court precluded their testimony. Also during the trial, the court, in effect, denied the plaintiffs' request for leave to present the jury with an alternative theory of liability.

The jury ultimately rendered a verdict in favor of the defendants, finding that the defendants had communicated the $12 million offer to the plaintiffs. Thereafter, the plaintiffs moved, inter alia, for an order granting them a new trial on the first seven causes of action and for judgment in their favor on the eighth cause of action. In an order dated February 15, 2013, the Supreme Court denied that motion.

In a decision and order dated December 17, 2015, the Appellate Division, Third Department, among other things, affirmed a judgment of the Supreme Court, Ulster County, which determined that the defendants were not discharged for cause in the underlying action and, therefore, that the defendants were entitled to a fee (see *Doviak v Lowe's Home Ctrs., Inc.*, 134 AD3d 1324 [2015]).

"Under the common-law doctrine of spoliation, a party may

be sanctioned where it negligently loses or intentionally destroys key evidence" (*Morales v City of New York*, 130 AD3d 792, 793 [2015]; *see* CPLR 3126; *Eremina v Scparta*, 120 AD3d 616, 617 [2014]; *Biniachvili v Yeshivat Shaare Torah, Inc.*, 120 AD3d 605, 606 [2014]). "The party requesting sanctions for spoliation has the burden of demonstrating that a litigant intentionally or negligently disposed of critical evidence, and fatally compromised its ability to prove its claim or defense" (*Morales v City of New York*, 130 AD3d at 793 [internal quotation marks omitted]; *see Lentini v Weschler*, 120 AD3d 1200, 1201 [2014]). "[T]he Supreme Court has broad discretion in determining what, if any, sanction should be imposed for spoliation of evidence" and may, "under appropriate circumstances, impose a sanction even if the destruction occurred through negligence rather than wilfulness, and even if the evidence was destroyed before the spoliator became a party, provided the spoliator was on notice that the evidence might be needed for future litigation" (*Biniachvili v Yeshivat Shaare Torah, Inc.*, 120 AD3d at 606; *see Ortiz v Bajwa Dev. Corp.*, 89 AD3d 999 [2011]; *Awon v Harran Transp. Co., Inc.*, 69 AD3d 889, 890 [2010]; *but see Eremina v Scparta*, 120 AD3d at 618). This Court will substitute its judgment for that of the Supreme Court only if that court's discretion was improvidently exercised (*see Morales v City of New York*, 130 AD3d at 793; *Samaroo v Bogopa Serv. Corp.*, 106 AD3d 713, 714 [2013]; *Ortiz v Bajwa Dev. Corp.*, 89 AD3d at 999).

Here, the record supports the Supreme Court's conclusion that the plaintiffs failed to demonstrate that the defendants intentionally or negligently destroyed fingerprint evidence which was critical to their case. The plaintiffs failed to demonstrate that they requested that the offer document be tested for fingerprints, or that it be preserved for forensic testing prior to Mrs. Doviak's deposition, or otherwise informed the defendants of their desire to conduct fingerprint analysis. The plaintiffs' boilerplate demand during discovery that they be permitted to examine original documents on request does not satisfy this requirement, nor is it reasonable to contend that the defendants should have anticipated the plaintiffs' desire for forensic testing of the offer document (*cf. Standard Fire Ins. Co. v Federal Pac. Elec. Co.*, 14 AD3d 213, 217 [2004]). Thus, the plaintiffs failed to demonstrate that, in handing the original document to Mrs. Doviak at her deposition, the defendants intentionally or negligently destroyed potential forensic evidence (*see Morales v City of New York*, 130 AD3d at 793; *Lentini v Weschler*, 120 AD3d at 1201). In any event, the plaintiffs failed to demonstrate that, by failing to preserve the

offer document for forensic testing, the defendants had fatally compromised the plaintiffs' ability to prove their claims (*see Morales v City of New York*, 130 AD3d at 793; *Lentini v Weschler*, 120 AD3d at 1201). Therefore, the court providently exercised its discretion in denying the plaintiffs' motion for sanctions for spoliation.

"An expert is qualified to proffer an opinion if he or she is 'possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable' " (*Leicht v City of N.Y. Dept. of Sanitation*, 131 AD3d 515, 516 [2015], quoting *Matott v Ward*, 48 NY2d 455, 459 [1979]; *see Formica v Formica*, 101 AD3d 805, 806 [2012]). To be admissible, the expert's opinion, "taken as a whole, must also reflect an acceptable level of certainty" (*Espinal v Jamaica Hosp. Med. Ctr.*, 71 AD3d 723, 724 [2010], citing *Matott v Ward*, 48 NY2d at 459-460). The admissibility of expert testimony is a mixed question of law and fact (*see Price v New York City Hous. Auth.*, 92 NY2d 553, 558 [1998]). An expert's alleged lack of experience is a factor which affects the weight to be given to his or her opinion, but does not affect its admissibility (*see Mack-Cali Realty, L.P. v Everfoam Insulation Sys., Inc.*, 110 AD3d 680, 682 [2013]; *Espinal v Jamaica Hosp. Med. Ctr.*, 71 AD3d at 724). "[T]he 'admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court' " (*Price v New York City Hous. Auth.*, 92 NY2d at 558, quoting *People v Cronin*, 60 NY2d 430, 433 [1983]).

In evaluating the opinions of the plaintiffs' proffered expert on legal ethics (hereinafter the ethics expert), the Supreme Court referred to the *Frye* standard (*see Frye v United States*, 293 F 1013, 1013-1014 [1923]), which "asks 'whether the accepted techniques, when properly performed, generate results accepted as reliable within the scientific community generally' " (*Parker v Mobil Oil Corp.*, 7 NY3d 434, 446 [2006], quoting *People v Wesley*, 83 NY2d 417, 422 [1994]). As the plaintiffs correctly contend, "an expert opinion based on personal training and experience is not subject to a *Frye* analysis" (*Johnson v State*, 933 So 2d 568, 570 [Fla Dist Ct App 2006]; *see People v Oddone*, 22 NY3d 369, 376 [2013]). However, while the court erred in characterizing its evaluation of the ethics expert's proffered testimony as a *Frye* analysis (*see People v Oddone*, 22 NY3d at 376), the court's explanation of its ruling precluding the proposed testimony makes clear that, despite its incorrect characterization, the ruling was, in fact, based upon the correct standard. The court's conclusion, that the ethics expert's

"proof failed in that regard" because he was "unable to specify the data and other criteria supporting his opinion," was supported by the record and demonstrates that the court did not apply the *Frye* standard, but instead made its ruling based upon whether the ethics expert possessed the requisite skill, training, education, knowledge, or experience from which it could be assumed that the information imparted or the opinion rendered was reliable (*see Matott v Ward*, 48 NY2d at 459; *Leicht v City of N.Y. Dept. of Sanitation*, 131 AD3d at 516). Therefore, the court did not improvidently exercise its discretion in precluding the testimony of the ethics expert (*see Price v New York City Hous. Auth.*, 92 NY2d at 558).

The plaintiffs contend that, in evaluating the proffered testimony of their proposed expert on legal malpractice (hereinafter the malpractice expert), the Supreme Court improperly applied the "locality rule." This is the concept that the quality of a professional's work must be measured against that of professionals from a locality of comparable size, which is often applied to expert testimony regarding medical care (*see* Restatement [Second] of Torts § 299A ["Undertaking in Profession or Trade"], Comment *g*). The plaintiffs are correct that, in general, this rule does not apply to the work of legal professionals. The record, however, does not demonstrate that the court applied the locality rule.

The plaintiffs asserted at trial that the malpractice expert would testify regarding a variety of alleged legal errors committed by the defendants during the trial of the underlying action. The malpractice expert's résumé demonstrated that she was a respected attorney in her community and well-qualified to represent clients in personal injury cases there. It was clear from her testimony at the hearing, however, that she was not prepared to testify about personal injury litigation in New York and, in particular, was not familiar with the substantive and procedural law and the practice norms relevant to the plaintiffs' allegations of legal malpractice. Therefore, the Supreme Court correctly concluded that she lacked the requisite skill, training, education, knowledge, or experience from which it could be assumed that the information imparted or the opinion rendered was reliable (*see Matott v Ward*, 48 NY2d at 459; *Leicht v City of N.Y. Dept. of Sanitation*, 131 AD3d at 516; *Formica v Formica*, 101 AD3d at 806) and that her opinion, taken as a whole, did not reflect an acceptable level of certainty (*see Espinal v Jamaica Hosp. Med. Ctr.*, 71 AD3d at 724).

Contrary to the plaintiffs' contention, the Supreme Court did not err in declining to submit to the jury the eighth cause of

action (*see generally* CPLR 4211; *Doviak v Finkelstein & Partners, LLP*, 90 AD3d 696, 699 [2011]). Furthermore, under the circumstances of this case, the court providently exercised its discretion when it determined that the eighth cause of action should be referred to the Supreme Court, Ulster County, for disposition in the context of the entry of a final judgment in the underlying action (*see Joel R. Brandes, P.C. v Ferraro*, 257 AD2d 610 [1999]; *see also Goodwin v Rice*, 79 AD3d 699, 700 [2010]; *Matter of Goldrich v Central Trust Co.*, 128 AD2d 615, 616 [1987]).

Finally, the Supreme Court did not improvidently exercise its discretion in declining to permit the plaintiffs to present their alternative theory of liability to the jury (*see* CPLR 4011; *see generally People v Griffin*, 20 NY3d 626, 630-631 [2013]; *People v Knowles*, 88 NY2d 763, 766 [1996]). Rivera, J.P., Leventhal, Sgroi and Hinds-Radix, JJ., concur.