OPINION OF THE COURT
Angiolillo, J.P
The parties have been involved in a long-standing dispute regarding the Town of Carmel’s regulation of the defendants’ commercial marina pursuant to the Town’s zoning ordinance. The marina is located on Lake Mahopac, a navigable lake owned by the State of New York. In this, the latest chapter in the parties’ dispute, the Town sought to enjoin the defendants’ use of certain docks in the lake which are not attached to the shoreline. By order dated August 19, 2009, the Supreme Court granted the Town’s motion for a preliminary injunction pursuant to the Town’s authority to regulate construction under the New York State Uniform Fire Prevention and Building Code Act (Executive Law § 370 et seq. [hereinafter the Uniform Building Code Act]). In the order appealed from, the Supreme Court, in effect, upon renewal, adhered to its determination granting the Town’s motion for a preliminary injunction, and denied that branch of the defendants’ motion which was pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action. We do not agree that the Town established its entitlement to a preliminary injunction and further conclude that the Town failed to state a cause of action pursuant to the Uniform Building Code Act or the Town’s zoning ordinance. Where, as here, the State owns a navigable body of water and the submerged land beneath that water, the State has exclusive authority to regulate construction on that submerged land absent a delegation of that authority to a municipality.
History of the Dispute
The defendants, Charles Melchner and Lillian Melchner, are the owners of Mahopac Marina (hereinafter the marina), which *85 provides recreational boating access to Lake Mahopac in the Town of Carmel, Putnam County. They purchased the business in 1970, when it consisted of a boathouse and about 30 boat slips on two parallel piers that extended from a single lakefront parcel designated as tax lot 43. Although lot 43 was located in a residential zoning district, the property had been used as a commercial marina before the Melchners purchased it. In 1971, the Town filed a civil action against the Melchners challenging their operation of a commercial marina in a residential district, but the Town failed to pursue that lawsuit to conclusion.
In subsequent years, the Melchners purchased the adjoining lakefront parcels designated as tax lots 39, 40, 41, and 42, all of which were zoned in a residential district. In the spring of 1998, the Melchners constructed a new pier with boat slips extending into the water from lots 41 and 42 and a walkway along the shoreline which connected the piers on their properties. In response to this activity, in June 1998, the Town initiated a criminal action against the Melchners (hereinafter the first criminal action), charging them with 18 counts of violating various provisions of the Code of the Town of Carmel (hereinafter the Town Code), including provisions of the Town of Carmel Zoning Ordinance (Town Code ch 156).
In June 1999, during the pendency of the first criminal action, the Melchners applied to the Zoning Board of Appeals of the Town of Carmel (hereinafter the Zoning Board) for a determination that the commercial marina was a preexisting, nonconforming use or, alternatively, for use and area variances. After Zoning Board meetings, the Melchners withdrew their application prior to receiving a determination.
In July 2000, the Town commenced a second civil action to enjoin the Melchners from operating the marina or engaging in any other commercial use on lots they acquired subsequent to the original lot 43. In January 2001, the Supreme Court granted preliminary injunctive relief and directed the Melchners to file applications for site plan approval and variances with the Zoning Board. After a hearing, the Zoning Board determined that the portion of the marina which had been expanded onto lots 39, 40, 41, and 42 was not a preexisting, nonconforming use, but granted use and area variances permitting the commercial expansion of the marina. After the variances were granted, the Supreme Court vacated the preliminary injunction in the second civil action.
In November 2002, an association of lake residents and individual residents commenced a proceeding pursuant to CPLR *86 article 78, seeking to annul the Zoning Board’s determination granting use and area variances. By judgment entered April 22, 2003, the Supreme Court granted the petition and annulled the Board’s determination, finding that the Melchners failed to show that their alleged hardship was not self-created. On appeal to this Court, we affirmed the judgment (see Matter of Friends of Lake Mahopac v Zoning Bd. of Appeals of Town of Carmel, 15 AD3d 401 [2005]). The record established that the Melchners “were in fact aware prior to purchase that the lots were located in a residential zone, and that the operation of the adjoining marina and its expansion onto the subject lots was of questionable legality,” and thus, the Zoning Board’s determination ran afoul of the rule that an “owner who knowingly acquires land for a use prohibited by zoning may not obtain a use variance on the ground of hardship” (id. at 402-403; see Town Law § 267-b [2] [b]).
Meanwhile, the charges in the first criminal action were tried before a jury in the Town Justice Court. Lillian Melchner was acquitted of all 18 counts, and Charles Melchner was convicted of three violations of the Town Code for (1) nonresidential use of lot 40, (2) failure to obtain site plan approval for the walkway on lot 41, and (3) failure to obtain a building permit for the walkway on lot 41. By judgment rendered January 27, 2003, the court imposed fines in the sums of $52,000, $51,000, and $51,000, respectively, for these counts (see People v Melchner, 4 Misc 3d 132[A], 2004 NY Slip Op 50727[U] [App Term, 9th & 10th Jud Dists 2004]). On direct appeal, the Appellate Term vacated the conviction related to nonresidential use of lot 40, affirmed the other two convictions, and reduced the fines on those convictions from the sums of $51,000 each to $250 each, on the ground that each of the two counts in the accusatory instrument charged a single violation, not a continuing violation (see id.).
In late 2003, the Town initiated a second criminal action against the Melchners, charging them with nine violations of the Town Code related to their use of lots 41 and 42. In January 2006, the Town commenced a third civil action to enjoin the Melchners’ commercial use of lots 41 and 42. On April 20, 2007, the parties entered into a stipulation of settlement on the record resolving both the second criminal action and the third civil action (hereinafter the April 2007 settlement). Charles Melchner agreed to plead guilty to a single violation of the Town Code alleging his failure to seek site plan approval for a wood walkway *87 on lot 40, for which he would pay a fine in the sum of $35,000 and receive a conditional discharge. The Melchners also agreed to cease all commercial use of lots 39, 40, 41, and 42, and to remove the walkway on those lots and the boat slips extending into the water from lots 41 and 42. The second criminal action and the third civil action, which were discontinued and terminated by the April 2007 settlement, did not concern the Melchners’ continued operation of the preexisting, nonconforming commercial use of the marina on the original property, lot 43.
Immediately after the April 2007 settlement, the Melchners, among other things, removed the docks extending into the water from lots 41 and 42, and reconfigured them in the lake more than 35 feet away from the shore. An aerial photograph taken on July 3, 2007, depicted the reconfigured docks to consist of a two-sided dock with boat slips placed parallel to a dock on lot 43 and apparently attached to the dock on lot 43 by means of a perpendicular pier, which also had boat slips, thus creating a “T” shaped pier and dock. However, Charles Melchner averred that he did not attach the reconfigured docks to the dock on lot 43, and there is a gap between them which may be stepped over.
In late 2008, the Town commenced a third criminal action against the Melchners, which included allegations of an unlawful expansion of the marina without site plan approval or a building permit in violation of sections 156-61 and 156-72 of the zoning ordinance in the Town Code, respectively, and unlawful expansion of dock structures or mooring facilities beyond those that existed on September 1, 1962, in violation of Town Code § 55-5. The third criminal action was still pending at the time of the motion which is the subject of this appeal.
The Instant Action
By complaint dated June 30, 2009, the Town commenced this action (the fourth civil action), seeking to enjoin the Melchners from using the reconfigured docks and from using lots 39, 40, 41, and 42 for commercial purposes. The Town did not seek to enjoin the commercial use of the docks extending into the water from the original marina property, lot 43. The complaint, in effect, contains two causes of action: (1) that the reconfigured docks violate the zoning ordinance in the Town Code, which the Town may enforce by civil action pursuant to Town Law § 268 (hereinafter the first cause of action); and (2) that the reconfigured docks violate the terms of the April 2007 settlement (here *88 inafter the second cause of action). The complaint does not allege any violation of the Uniform Building Code Act.
By order to show cause dated July 13, 2009, the Town moved to preliminarily enjoin the Melchners from using the subject docks and to compel their removal. Pending a hearing on the motion, the Supreme Court temporarily restrained the Melchners from using the subject docks. In support of the motion for a preliminary injunction, the Town submitted the affidavits of Kenneth Schmitt, the Town Supervisor, and Michael Carnazza, the Town Director of Code Enforcement, attesting that the Melchners had enlarged the marina in violation of the Town Code. Specifically, Carnazza averred that the Melchners were using lots 39, 40, 41, and 42 for commercial purposes in a residential district without a building permit, site plan approval, or proper authorization for a commercial use, and the reconfigured docks affected an impermissible enlargement, structural alteration, or extension of the prior nonconforming use on lot 43, in violation of Town Code § 156-47 (A) (1). The Town also submitted the affidavit of William Spain, the former Carmel Town Attorney, Putnam County Attorney, and Carmel Zoning Board Chairman, in which he opined that the Melchners had illegally expanded the marina, contributing to overcrowding, dangerous boating conditions, and increased garbage and noise on the lake. Aerial photographs annexed to Spain’s affidavit showed the configuration of the docks on four dates from August 1989 to July 2007.
On July 17, 2009, the Town served the Melchners with the complaint and motion papers. On the extended return date for the motion, Friday, August 14, 2009, the Melchners served the Town with their papers in opposition. However, according to the Melchners’ counsel, he was unable to file the papers in court that day due to the early summer closing of the clerk’s office. Counsel sent the papers to the court by overnight mail and left telephone messages advising that the papers would be one day late, and requesting an extension for filing to Monday, August 17, 2009. Shortly thereafter, by order dated August 19, 2009, the Supreme Court (O’Rourke, J.), granted the Town’s motion for a preliminary injunction as unopposed, without considering the Melchners’ papers. The court enjoined the Melchners from using the subject docks and ordered their removal forthwith.
On March 29, 2010, after obtaining leave of the Supreme Court and a stay of enforcement of the order dated August 19, 2009, the Melchners moved for leave to renew their opposition *89 to the Town’s motion for a preliminary injunction and, thereupon, to deny the motion, and to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action. The Melchners submitted their original opposition papers and a supplemental affirmation in which their attorney recounted his attempts to file those papers with the court. The Melchners contended that the Town was not entitled to a preliminary injunction because the reconfigured docks did not violate the Town Code or the April 2007 settlement. Specifically, Charles Melchner averred that, during the settlement negotiations, the Town conceded that its jurisdiction extended only 25 feet into the lake from the shoreline and approved a diagram of the proposed reconfigured docks, placing them in the water 35 feet away from shore, provided that those docks were not connected to the preexisting docks on lot 43. Charles Melchner further averred that he did not attach the reconfigured docks to the docks on lot 43, and he obtained permission for the reconfigured docks from the New York State Office of General Services (hereinafter the OGS).
In addition, the Melchners submitted evidence and argument in support of that branch of their motion which was to dismiss the complaint for failure to state a cause of action on the ground that New York State has exclusive jurisdiction over the reconfigured docks pursuant to its authority to regulate navigable waters and state-owned submerged land. They submitted a 10-year submerged land license pursuant to the Public Lands Law, issued by the OGS on May 13, 2001, and a concurrent, nine-year amendment to that license issued on May 1, 2002, granting the marina permission to use and occupy state-owned submerged land for the purpose, of operating their marina on the original site and as expanded by the docks on tax lots 40 and 41. The Melchners’ attorney averred that, in February 2010, at the direction of the Supreme Court, the parties met with OGS officials, who opined that the Town lacked authority to enforce its zoning ordinance because it had not sought enabling legislation pursuant to Navigation Law § 46-a (2), which is the sole avenue for the enforcement of local laws concerning the construction of moorings and docks in state-owned navigable waters. The Melchners contended that, due to the Town’s lack of authority to enforce its zoning ordinance, the preliminary injunction must be vacated and the complaint dismissed.
In opposition, the Town conceded timely receipt of the Melchners’ original papers in opposition to its motion for a prelimi *90 nary injunction and did not object to the court’s consideration of those papers or of the Melchners’ new argument in support of dismissing the complaint pursuant to CPLR 3211. The Town conceded that Lake Mahopac falls within the definition of navigable waters under Navigation Law § 2 (4), and that the Town is not designated under Navigation Law § 46-a (2) as one of the localities authorized to regulate the construction and location of moorings and docks in navigable waters. Nevertheless, the Town contended that the Navigation Law does not confer exclusive jurisdiction upon the State to regulate navigable waters. For the first time, the Town raised the argument that it had the authority to regulate the construction of docks in Lake Mahopac pursuant to the Uniform Building Code Act. The Executive Law requires all municipalities to enforce the Uniform Building Code Act, which regulates building construction and safety, while the Navigation Law regulates navigation. The Town contended that the construction of docks is more logically regulated by the Uniform Building Code Act rather than pursuant to an expansive reading of the Navigation Law. However, the Town did not identify any particular code provision that allegedly was violated.
By order dated July 21, 2010, the Supreme Court (Nicolai, J.), in effect, upon renewal and consideration of the Melchners’ opposition papers, adhered to the prior determination granting the Town’s motion for a preliminary injunction. The court also denied that branch of the Melchners’ motion which was pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action. The court reasoned that the Navigation Law governs only the navigation of vessels and use of the waterways, over which the Town has no jurisdiction. However, the Town has the authority to regulate the construction of docks and slips pursuant to the Uniform Building Code Act and the Executive Law. We now modify, concluding, for the reasons that follow, that the Town was not entitled to a preliminary injunction because it failed to establish a likelihood of ultimate success on the merits, and that its first cause of action should have been dismissed pursuant to CPLR 3211 (a) (7) because it failed to state a cause of action.
Analysis
Preliminary Injunction
The purpose of a preliminary injunction is to preserve the status quo pending a trial. The remedy is considered a drastic *91 one, which should be used sparingly (see Trump on the Ocean, LLC v Ash, 81 AD3d 713, 715 [2011]). Generally, the decision to grant or deny a preliminary injunction lies within the sound discretion of the Supreme Court, which, in exercising its discretion, must determine if the moving party has established: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; and (3) a balance of the equities in favor of the injunction (see Doe v Axelrod, 73 NY2d 748, 750 [1988]; Trump on the Ocean, LLC v Ash, 81 AD3d at 715). However, “Town Law § 268 permits a town to seek preliminary injunctive relief without establishing special damage or injury to the public, or the nonexistence of an adequate remedy at law” (First Franklin Sq. Assoc., LLC v Franklin Sq. Prop. Account, 15 AD3d 529, 533 [2005]). Thus,
“[t]o obtain preliminary injunctive relief based on a violation of its zoning ordinances, a town need not satisfy the traditional three-part test for injunctive relief, but is required only [to] show that it has a likelihood of ultimate success on the merits and that the equities are balanced in its favor” (Town of Oyster Bay v Baker, 96 AD3d 824, 824 [2012] [internal quotation marks omitted]; see First Franklin Sq. Assoc., LLC v Franklin Sq. Prop. Account, 15 AD3d at 533; Incorporated Vil. of Freeport v Jefferson Indoor Mar., 162 AD2d 434, 436 [1990]).
Here, to establish entitlement to a preliminary injunction, the Town was required to establish the likelihood of ultimate success on the merits on at least one of the two causes of action in the complaint. The Town alleged under the first cause of action that the reconfigured docks violate the zoning ordinance in the Town Code, which the Town may enforce by civil action pursuant to Town Law § 268, and, under the second cause of action, that the reconfigured docks violate the terms of the April 2007 settlement. However, the Town failed to establish a likelihood of ultimate success on the merits on either cause of action.
Turning first to the Town’s alleged authority to regulate the reconfigured docks under the Uniform Building Code Act, we determine, as more fully set forth below, that the Town failed to allege such a cause of action in the complaint, much less establish the likelihood of prevailing on such a contention, and, thus, the preliminary injunction cannot stand on that basis.
The Town’s Authority to Enforce its Local Laws (First Cause of Action)
In all previous litigation, the parties have assumed that the *92 Town is authorized to regulate the Melchners’ commercial business through the enforcement of the Town Code, including the chapter containing the zoning ordinance (see Matter of Friends of Lake Mahopac v Zoning Bd. of Appeals of Town of Carmel, 15 AD3d at 401; People v Melchner, 4 Misc 3d at 132[A], 2004 NY Slip Op 50727[U], *2 [2004]). In this, the fourth civil action between the parties, the Melchners have raised, for the first time, the contention that the Town does not have the authority to enforce the Town Code with respect to moorings and docks placed in the water of a navigable lake owned by the State.*
Although the Melchners did not, in previous litigation, raise the issue of the Town’s authority to enforce its local laws, they properly raised the issue in Supreme Court in the instant action, and we now have occasion, for the first time, to address its merits. We note, however, that our consideration of the conflict between state and local law is confined within the context of the unique facts of the parties’ current dispute, which concerns only the reconfigured docks located in Lake Mahopac, approximately 35 feet from the shore. By contrast, the Town Code contains provisions governing other aspects of the marina’s business which do not involve the placement of piers or docks in the state-owned lake, for example, the Code violations which were the subject of the first criminal action concerning the construction of a walkway along the shoreline of the Melchners’ property (see People v Melchner, 4 Misc 3d 132[A], 2004 NY Slip Op 50727DJ] [2004]). Moreover, the April 2007 settlement, pursuant to which the second criminal action and the third civil action were resolved, included Charles Melchner’s agreement to plead guilty to a single violation of the Town Code alleging his failure to seek site plan approval for the wood walkway on lot 40. Here, however, in the fourth civil action, the alleged violation of the Town Code is premised exclusively on the subject reconfigured docks in the navigable waters of the state-owned lake. Thus, although we hold that the Town did not have authority to enforce provisions of the Town Code with respect to the subject reconfigured docks, we caution that this holding is limited to the cause of action as alleged in the complaint.
The Navigation Law governs “navigation and the use of navigable waters of the state” (Navigation Law § 1). Pursuant to Navigation Law § 30, the State has “jurisdiction over navigation on the navigable waters of the state and, except as *93 otherwise provided, shall enforce the provisions of this chapter and the regulations established thereunder” (see Navigation Law §§ 2 [2]; 10). Here, the Melchners contend, and the Town concedes, that Lake Mahopac is among the “navigable waters of the state,” defined as “all lakes, rivers, streams and waters within the boundaries of the state and not privately owned, which are navigable in fact or upon which vessels are operated” (Navigation Law § 2 [4]).
In addition, it is undisputed that the State owns the submerged land under the navigable waters of Lake Mahopac. The Melchners submitted evidence that they pay licensing fees to the State for a submerged land license with respect to the docks in front of tax lots 40, 41, and 43, which are constructed over “State-owned submerged land.” The State, through the OGS, may issue
“grants, leases, easements, and lesser interests, including permits, for the use of state-owned land underwater and the cession of jurisdiction thereof consistent with the public interest in the use of state-owned lands underwater for purposes of navigation, commerce, fishing, bathing, and recreation . . . and access to the navigable waters of the state” (Public Lands Law § 75).
Such grants may only be made to the owner of land adjacent to the land underwater {see Public Lands Law § 75 [7] [a]). Indeed, adjacent landowners are prohibited from constructing any “wharf, dock, pier, jetty, platform, breakwater, mooring or other structure ... in, on or above state-owned lands underwater” without an OGS-issued “lease, easement, permit, or other [authorization]” for such use (Public Lands Law § 75 [7] [b]).
Where, as here, “the State holds title to the land under navigable water in its sovereign capacity, its paramount authority ‘is not limited to regulation in the interest of navigation but extends to every form of regulation in the public interest’ ” (Town of N. Elba v Grimditch, 98 AD3d 183, 188 [2012], quoting People v System Props., Inc., 281 App Div 433, 440 [1953], mod on other grounds 2 NY2d 330 [1957]; see Langdon v Mayor of City of N.Y., 93 NY 129, 155-156 [1883]; Erbsland v Vecchiolla, 35 AD2d 564, 565 [1970], affd sub nom. Erbsland v Rubin, 33 NY2d 787 [1973]). “The ultimate control over the uses of public places is in the Legislature, and the only powers in this respect possessed by a municipality are derivative” (Matter of Lake George Steamboat Co. v Blais, 30 NY2d 48, 51-52 [1972] *94 [where State conveyed lakefront property to a Village for the purpose of constructing docks for public use, Village improperly leased a dock and related facilities to a private marina]).
An example of a statutory grant of municipal authority to regulate certain activities on state-owned navigable waters is found in Navigation Law § 46-a (2). The dozens of municipalities specifically identified in that section are authorized to adopt and enforce local laws which restrict or regulate “the manner of construction and location of boathouses, moorings and docks in any waters within or bounding the respective municipality to a distance of fifteen hundred feet from the shoreline” (Navigation Law § 46-a [2] [emphasis added]; cf. Matter of Malloy v Incorporated Vil. of Sag Harbor, 12 AD3d 107, 109 [2004] [in the Navigation Law, the legislature used the broader term “any waters,” rather than the specific term “navigable waters of the state,” when it wished to denote all bodies of water, not just navigable waters]). Another example of statutory delegation is found in Town Law § 130 (17) (1) (b), which authorizes local regulation of the “anchoring or mooring of vessels in any waters within or bounding the town to a distance of fifteen hundred feet” (see also Navigation Law § 46-a [1] [b] [granting the same authority to cities and villages]). This section of the Town Law authorizes municipal regulation of matters including, for example, boat slip permits (see Matter of Katz v Allan, 150 AD2d 688 [1989]), while Navigation Law § 46-a (2) specifically authorizes the identified municipalities to regulate, inter alia, the construction and placement of structures in state-owned navigable waters (see Town of N. Elba v Grimditch, 98 AD3d at 194). The latter form of authority is the subject of the instant litigation.
Here, the Town correctly conceded that it is not among those municipalities so authorized by Navigation Law § 46-a (2). Indeed, the Town also conceded that, although it became aware of Navigation Law § 46-a (2) at some point during its litigation with the Melchners, Town officials made the considered decision not to seek this statutory authorization, which would have allowed the Town to regulate the construction of moorings and docks belonging to every property owner on Lake Mahopac.
Prior to the enactment of Navigation Law § 46-a (2) in 1972, this Court considered the authority of the City of Rye to enforce its local laws prohibiting a boatyard’s placement of certain structures in the navigable tidal waters of Milton Harbor (see Erbsland v Vecchiolla, 35 AD2d at 564). Noting that the State *95 held title to the land under the tidal waters at issue, and that “[n]avigable waters are within the sole jurisdiction and control of the State of New York,” we held that “the paramount authority of the State to control uses upon a navigable body of water prevents the City of Rye from exercising jurisdiction” to regulate the boatyard’s “floats” that were located “beyond the foreshore” (id. at 565). While holding that the City had no authority to enforce its local laws with respect to those floats, this Court declined to grant full relief to the boatyard, “because the criminal proceeding related not merely to the uses in Milton Harbor but also to other claimed violations of the zoning ordinance with relation to upland uses” (id.). Thus, we recognized a distinction between local laws seeking to regulate structures in navigable waters over state-owned submerged land, as opposed to local laws regulating structures on the land adjacent to the water. State law preempts local law in the first instance, but not in the second, with respect to a single commercial property owner.
Subsequent to its enactment, Navigation Law § 46-a (2) has been amended several times to authorize an increasing number of municipalities to enact local laws regulating the construction of moorings and docks in navigable waters (see e.g. L 1985, ch 713; L 1988, ch 423; L 2011, ch 278). In cases involving municipalities not specifically identified in Navigation Law § 46-a (2), the Appellate Division, Fourth Department, has concluded that state law preempts local law with respect to the construction of docks and piers on navigable waters (see Town of Alexandria v MacKnight, 281 AD2d 945 [2001] [town lacked authority to require site plan approval for the construction of a floating dock system on navigable waters of the state]; Britt v Zoning Bd. of Appeals of Town of Grand Is., 124 AD2d 987 [1986] [Town of Grand Island had no authority to issue a building permit for construction on navigable waters of the state]; but see L 1988, ch 423 [amending Navigation Law § 46-a (2), two years after Britt, to include the Town of Grand Island as an authorized municipality]). The New York State Attorney General has also stated the general rule that navigable waters are subject to the sole jurisdiction and control of the State, and that local governments may not regulate activities on navigable waters without a specific grant of authority by the legislature (see 2004 Ops Atty Gen No. 2004-5 at 2, 8-9, 2004 WL 1148721, *1-2, 5-6, 2004 NY AG LEXIS 12, *4-5, 20-21; 1997 Ops Atty Gen No. 97-29 at 1-2, 1997 WL 397810, *1-2, 1997 NY AG LEXIS 48, *2-4).
*96 In 2003, the Appellate Division, Third Department, relying on the general rule that the State has “exclusive jurisdiction” over navigable waters, held that the Navigation Law preempted local law with respect to the construction of docks and piers in navigable waters (Higgins v Douglas, 304 AD2d 1051, 1055 [2003]; see Mohawk Val. Ski Club v Town of Duanesburg, 304 AD2d 881, 882 [2003]). Recently, however, the Third Department retreated from Higgins v Douglas and Mohawk Val. Ski Club v Town of Duanesburg, stating: “To the extent that those decisions may suggest that the Navigation Law displaces local land use laws on navigable waters that are not owned by the State in its sovereign capacity, those cases should no longer be followed” (Town of N. Elba v Grimditch, 98 AD3d at 195 [emphasis added]). Specifically at issue in both Higgins v Douglas and Town of N. Elba v Grimditch was the authority of the Town of North Elba to regulate structures on Lake Placid, a navigable body of water. In Higgins v Douglas, the Court expressly rejected an argument that state law would not preempt local law if it were to be determined that the submerged land of Lake Placid is privately owned (304 AD2d at 1056 n 6). However, in Town of N. Elba v Grimditch, the Court examined the history of Lake Placid and determined that, although it was a navigable body of water, the submerged land was privately owned by the riparian owners. The Court concluded that the Navigation Law did not preempt local land use law with respect to the construction of a boathouse on Lake Placid.
In a well-reasoned analysis, the Court in Town of N. Elba addressed the distinction between state-owned and privately-owned navigable bodies of water. Where the State, in its sovereign capacity, owns the body of water and submerged land, the State retains “absolute control” over it (98 AD3d at 192, quoting Langdon v Mayor of City of N.Y., 93 NY 129, 155-156 [1883]), and the State’s regulation “ ‘is not limited to . . . navigation but extends to every form of regulation in the public interest’ ” (id. at 188, quoting People v System Props., Inc., 281 App Div at 440). In such circumstances, municipalities may not enact regulations without a delegation of authority from the State. “Navigation Law §§ 46 and 46-a are merely examples of the State’s delegation of its authority over its land under water held in its sovereign capacity and the regulation of vessels as provided in the Navigation Law”; “absent the delegations in Navigation Law § 46-a allowing local municipalities to regulate the manner of construction and location of structures in waters *97 owned by the State in its sovereign capacity, municipalities bordering or encompassing such waters would have no authority to issue such regulations” {id. at 194-195). However, where the State does not own the submerged land in its sovereign capacity, “Navigation Law § 46-a contains no express restriction on the exercise of this authority by municipalities,” and state law does not preempt local laws regulating construction on navigable waters {id. at 195).
The holding in Town of N. Elba is consistent with our holding in Erbsland v Vecchiolla (35 AD2d at 564) that the State has exclusive jurisdiction over the regulation of structures in navigable tidal waters where the State owns the submerged land. Town of N. Elba is also consistent with cases involving tidal waters bordering on and lying within the boundaries of Nassau and Suffolk Counties, which are specifically excluded from the navigable waters of the state {see Navigation Law § 2 [4]). Since those waters and submerged lands are owned by the respective municipalities in Nassau and Suffolk Counties, those local governments have plenary authority to regulate such waterways and submerged lands {see Melby v Duffy, 304 AD2d 33, 36 [2003]; Matter of Rottenberg v Edwards, 103 AD2d 138, 140-141 [1984]).
The Court in Town of N. Elba concluded that state law did not preempt local laws because the land under Lake Placid was privately owned. Here, by contrast, it is undisputed that the State owns the navigable waters and the submerged land of Lake Mahopac in its sovereign capacity. We agree with the reasoning of the Court in Town of N. Elba that, where, as here, the State owns the lake, state law preempts local law. The State has not delegated to the Town the authority to regulate the construction of docks in or on Lake Mahopac pursuant to Navigation Law § 46-a or otherwise. Thus, the Town has no authority to regulate the construction or placement of the subject reconfigured docks in the waters of Lake Mahopac and, accordingly, cannot prevail on the first cause of action.
In addressing that branch of the Melchners’ motion which was pursuant to CPLR 3211 (a) (7) to dismiss the first cause of action, we apply familiar principles. The standard is whether the pleading states a cause of action, and the court must accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory {see Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Quiroz v *98 Zottola, 96 AD3d 1035, 1037 [2012]; Sokol v Leader, 74 AD3d 1180, 1180-1181 [2010]). Applying this standard, we accept as true the facts as alleged concerning the location of the Melchners’ business and the reconfigured docks in Lake Mahopac and determine that the Town has failed to state a cause of action for injunctive relief premised upon an alleged violation of the Town Code. Accordingly, the Supreme Court should have granted that branch of the Melchners’ motion which was pursuant to CPLR 3211 (a) (7) to dismiss the first cause of action.
The Alleged Violation of the April 2007 Settlement (Second Cause of Action)
The second cause of action sought injunctive relief to enforce the Melchners’ agreement under the April 2007 settlement. The Town alleged that the reconfigured docks constituted “a violation of the express terms of [the April 2007] settlement.” In support of their motion for a preliminary injunction, the Town submitted only a portion of a transcript of the settlement made in open court, indicating that the Melchners agreed to “remove all boat slips on . . . Lots 40 and 41 that are presently in violation of the Town of Carmel Town Code.” The Town also submitted an aerial photograph, which appears to show the former docks from lots 40 and 41 reattached by a pier perpendicular to a dock on lot 43, and affidavits of Town officials averring that, in their opinion, the reconfigured docks violate the terms of the April 2007 settlement.
In opposition to the Town’s motion for a preliminary injunction, Charles Melchner averred that he complied with the April 2007 settlement by removing all boat slips from lots 40 and 41. He further averred that the Town had approved a diagram of his proposal to reconfigure the docks and that he abided by the Town’s condition that they not be attached to the docks on lot 43.
Stipulations of settlement are contracts (see Moshe v Town of Ramapo, 54 AD3d 1030, 1031 [2008]). As such, they are governed by general contract principles for their interpretation and effect, and the court has the responsibility of effectuating the true intent of the parties (see American Bridge Co. v Acceptance Ins. Co., 51 AD3d 607, 609 [2008]; Fukilman v 31st Ave. Realty Corp., 39 AD3d 812, 813 [2007]). A plenary action to enforce the provisions of a stipulation of settlement is appropriate where the proceeding or action it settled was terminated by a stipulation of discontinuance (see Teitelbaum Holdings v Gold, 48 NY2d 51, 55 [1979]; Matter of Serpico, 62 AD3d 887 [2009]).
*99 Here, in support of its position that the Melchners violated the terms of the April 2007 settlement, the Town submitted only an incomplete transcript of the agreement and an aerial photograph of the reconfigured docks. This evidence was insufficient to establish a likelihood of success on the merits of the second cause of action. The ultimate determination of this cause of action is dependent upon an interpretation of the terms of the agreement in order to give effect to the true intent of the parties.
Our holding that the Town has no authority to enforce the Town Code with respect to the subject docks has no relevance to our determination that the Town is not entitled to a preliminary injunction premised upon the second cause of action alleging a violation of the April 2007 settlement. First, the record before us in this, the fourth civil action, does not contain a full record of the second criminal action and the third civil action which were resolved by the April 2007 settlement. Moreover, the information which is provided in the instant record indicates that the subject matter of the second criminal action and the third civil action included not only alleged Town Code violations with respect to structures in the water, but also alleged violations with respect to the Melchners’ use of the uplands. In any event, generally, by entering into a stipulation of settlement, the parties waive any claims or defenses they may have against each other in that litigation (see Palmieri v Town of Babylon, 87 AD3d 625, 626 [2011]; Option One Mtge. Corp. v Daddi, 60 AD3d 920 [2009]). Thus, to the extent that the Melchners could have asserted a defense in the second criminal action or the third civil action to the Town’s enforcement of the Town Code, they waived that defense when they entered into the settlement.
In addressing that branch of the Melchners’ motion which was, in effect, pursuant to CPLR 3211 (a) (7) to dismiss the second cause of action, we accept the facts as alleged in the complaint as true, accord the Town the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d at 87-88). The complaint adequately pleads a cause of action for injunctive relief to enforce the April 2007 settlement, which the Melchners allegedly breached by reconfiguring the subject docks. Accordingly, the Supreme Court properly denied that branch of the Melchners’ motion which was pursuant to CPLR 3211 (a) (7) to dismiss the second cause of action.
*100 The Uniform Building Code Act
In 1981, the legislature enacted the Uniform Building Code Act, providing for local enforcement of “a uniform code addressing building construction and fire prevention in order to provide a basic minimum level of protection to all people of the state from hazards of fire and inadequate building construction” (Executive Law § 371 [2] [b]; see Executive Law §§ 373 [1]; 374, 377, 378). The Uniform Building Code Act defines a “building” as “a combination of any materials, whether portable or fixed, having a roof, to form a structure affording shelter for persons, animals or property” (Executive Law § 372 [3] [emphasis added]). Every local government is required to administer and enforce the Uniform Building Code Act {see Executive Law § 381 [2]), and the State is empowered to take a number of actions to ensure local government compliance {see Executive Law § 381 [4]).
Here, the Town asserts that the State’s authority to regulate activities on navigable waters does not preempt the Town’s authority to enforce the Uniform Building Code Act, and indeed, the Executive Law imposes a duty on it to enforce the Act. The Town raised this contention for the first time in opposition to the Melchners’ motion for leave to renew and to dismiss the complaint. The Town did not allege in the complaint that the subject reconfigured docks violated the Uniform Building Code Act or any provision thereof. In addition, the Town did not, in support of its motion for a preliminary injunction, adduce any evidence or argument to establish a likelihood of success on the merits of such a claim. Thus, while the Town was entitled to respond to the arguments which were raised for the first time in the Melchners’ motion for leave to renew and to dismiss the complaint, the Town raised the argument concerning the Uniform Building Code Act in a vacuum, without specific relation to the facts of this litigation, in order to assert a basis for local authority and to refute the Melchners’ contentions regarding exclusive State jurisdiction.
Even so, the Town has not posed a pure issue of conflict between the application of local law and state law, but an issue of alleged conflict between state law (the Navigation Law) and the local enforcement of another state law (the Uniform Building Code Act). The enforcement of the Uniform Building Code Act may also involve the application of related local laws. For example, in a case involving the construction of a boathouse on the allegedly navigable waters of Upper Saranac Lake, the Ap *101 pellate Division, Third Department, held that the town had the authority to require the owner to obtain a building permit (see Beneke v Town of Santa Clara, 36 AD3d 1195, 1198 [2007]). The Court determined that the Navigation Law did not “clearly override the Town’s responsibility” to enforce the Uniform Building Code Act, and “[e]ven if the Navigation Law should be found applicable, the seeming conflict between its provisions and the Executive Law could and should be reconciled” (id. at 1198). Thus, the Court recognized that the issue was one of reconciling the provisions of the Navigation Law and the Executive Law. More recently, the Third Department reaffirmed that the Uniform Building Code Act and the Navigation Law may be reconciled, holding that a boathouse constructed on the navigable waters of Lake Placid was a structure subject to the Uniform Building Code Act which the Town of North Elba must enforce (see Town of N. Elba v Grimditch, 98 AD3d at 187).
Here, as noted above, the Town alleged under the first cause of action that the reconfigured docks violate the zoning ordinance in the Town Code, and under the second cause of action, that the reconfigured docks violate the terms of the April 2007 settlement. The Town, however, failed to allege any violation of the Uniform Building Code Act, and we cannot fashion such a cause of action from the allegations in the complaint, particularly since the reconfigured docks are not alleged to be structures “having a roof’ as defined in the Uniform Building Code Act (Executive Law § 372 [3]). Accordingly, the Town failed to establish a likelihood of ultimate success on such a claim, and thus, it was not entitled to a preliminary injunction on that basis.
Accordingly, the order dated July 21, 2010, is modified, on the law, (1) by deleting the provision thereof, in effect, upon renewal, adhering to the determination in the order dated August 19, 2009, granting the plaintiff’s motion for a preliminary injunction, and substituting therefor a provision, upon renewal, vacating that determination and, thereupon, denying the plaintiffs motion for a preliminary injunction, and (2) by deleting the provision thereof denying that branch of the defendants’ motion which was pursuant to CPLR 3211 (a) (7) to dismiss the first cause of action, alleging a violation of the Town Code of the Town of Carmel, and substituting therefor a provision granting that branch of the defendants’ motion; as so modified, the order is affirmed insofar as appealed from.
Dickerson, Austin and Cohen, JJ, concur.
*102 Ordered that the order dated July 21, 2010, is modified, on the law, (1) by deleting the provision thereof, in effect, upon renewal, adhering to the determination in the order dated August 19, 2009, granting the plaintiff’s motion for a preliminary injunction, and substituting therefor a provision, upon renewal, vacating that determination and, thereupon, denying the plaintiffs motion for a preliminary injunction, and (2) by deleting the provision thereof denying that branch of the defendants’ motion which was pursuant to CPLR 3211 (a) (7) to dismiss the first cause of action, alleging a violation of the Town Code of the Town of Carmel, and substituting therefor a provision granting that branch of the defendants’ motion; as so modified, the order is affirmed insofar as appealed from, with costs to the defendants.

 During oral argument on this appeal, counsel for the Melchners stated that the issue of exclusive state jurisdiction was raised but not determined in one of the previous criminal actions.