■ JANELLE GOLAN, Respondent, v NORTH SHORE-LONG ISLAND JEWISH HEALTH SYSTEM, INC., et al., Appellants, et al., Defendants. [48 NYS3d 216]—

In an action, inter alia, to recover damages for medical malpractice and wrongful death, the defendants North Shore-

Long Island Jewish Health System, Inc., Long Island Jewish Medical Center, and Frank Manetta appeal from so much of an order of the Supreme Court, Queens County (O'Donoghue, J.), dated March 31, 2015, as granted the plaintiff's motion to impose sanctions against them for the willful spoliation and destruction of evidence to the extent of precluding them from contesting that a suture failed for any reason other than the actions of the surgeon and/or asserting a defense at trial that the suture was defective or unsafe. By decision and order on motion dated August 10, 2015, this Court granted the defendants' motion to stay the trial pending hearing and determination of the appeal.

Ordered that the order is reversed insofar as appealed from, on the facts and in the exercise of discretion, with costs, and the plaintiff's motion to impose sanctions against the defendants North Shore-Long Island Jewish Health System, Inc., Long Island Jewish Medical Center, and Frank Manetta is denied.

The Supreme Court granted the plaintiff's motion to impose sanctions against the defendants North Shore-Long Island Jewish Health System, Inc., Long Island Jewish Medical Center, and Frank Manetta (hereinafter collectively the defendants) for the willful spoliation and destruction of evidence to the extent of precluding the defendants from contesting that a suture failed for any reason other than the actions of the surgeon and/or asserting a defense at trial that the suture was defective or unsafe.

"A party that seeks sanctions for spoliation of evidence must show that the party having control over the evidence possessed an obligation to preserve it at the time of its destruction, that the evidence was destroyed with a 'culpable state of mind,' and 'that the destroyed evidence was relevant to the party's claim or defense such that the trier of fact could find that the evidence would support that claim or defense'" (*Pegasus Aviation I, Inc. v Varig Logistica S.A.*, 26 NY3d 543, 547 [2015], quoting *VOOM HD Holdings LLC v EchoStar Satellite L.L.C.*, 93 AD3d 33, 45 [2012]). Where evidence has been intentionally or willfully destroyed, its relevance is presumed (*see Pegasus Aviation I, Inc. v Varig Logistica S.A.*, 26 NY3d at 547). However, where evidence has been destroyed negligently, the party seeking spoliation sanctions must establish that the destroyed evidence was relevant to the party's claim or defense (*see id.* at 547-548).

The Supreme Court has broad discretion in determining what, if any, sanction should be imposed for the spoliation of

evidence (*see id.* at 551; *Ortiz v Bajwa Dev. Corp.*, 89 AD3d 999, 999 [2011]; *Iannucci v Rose*, 8 AD3d 437, 438 [2004]). Moreover, "[t]he court may, under appropriate circumstances, impose a sanction 'even if the destruction occurred through negligence rather than wilfulness, and even if the evidence was destroyed before the spoliator became a party, provided it was on notice that the evidence might be needed for future litigation' " (*Ortiz v Bajwa Dev. Corp.*, 89 AD3d at 999, quoting *DiDomenico v C & S Aeromatik Supplies*, 252 AD2d 41, 53 [1998]; *see Samaroo v Bogopa Serv. Corp.*, 106 AD3d 713, 714 [2013]; *Iannucci v Rose*, 8 AD3d at 438).

Here, a day after the decedent underwent quadruple vessel coronary artery bypass grafting performed by Manetta, a cardiothoracic surgeon, the decedent experienced an acute onset of massive bleeding. Thereafter, during a second operation to resuscitate the decedent and repair the anastomosis, Manetta observed that a stitch had broken at the base of the knot. The stitch was discarded during the second operation and was not sent to any laboratory for analysis.

The plaintiff moved to impose sanctions against the defendants based on spoliation of evidence, contending that the destruction of the broken suture deprived her of vital evidence necessary to respond to any defense claim that a defective suture or other force was the cause of the failed anastomosis and not a departure from good medical and surgical care. In response to the plaintiff's motion, the defendants submitted the affirmation of a medical expert, who opined that the defendants did not depart from the standard of care by discarding the broken suture and that preservation of the broken suture was immaterial to determining the cause of the failed anastomosis.

Under the circumstances presented, the Supreme Court improvidently exercised its discretion in granting the plaintiff's motion to impose sanctions against the defendants for the wilful spoliation and destruction of evidence, as the plaintiff failed to demonstrate that the defendants were obligated to preserve the broken suture at the time of its destruction, that the suture was destroyed with a "culpable state of mind," and/or that the destroyed suture was relevant to the plaintiff's claim (*Pegasus Aviation I, Inc. v Varig Logistica S.A.*, 26 NY3d at 547; *see Geffner v North Shore Univ. Hosp.*, 57 AD3d 839 [2008]; *Diaz v Rose*, 40 AD3d 429 [2007]; *Hemingway v New York City Health & Hosps. Corp.*, 13 AD3d 484 [2004]; *Iannucci v Rose*, 8 AD3d 437 [2004]; *cf. Coleman v Putnam Hosp. Ctr.*, 74 AD3d 1009 [2010]). In any event, the plaintiff failed to establish that the

defendants were on notice that the suture might be needed for future litigation (*see Weiss v Bellevue Maternity Hosp.*, 121 AD3d 1480 [2014]; *Diaz v Rose*, 40 AD3d 429 [2007]; *cf. Ortiz v Bajwa Dev. Corp.*, 89 AD3d 999 [2011]). Chambers, J.P., Hall, Miller and Connolly, JJ., concur.