SM v Plainedge Union Free Sch. Dist. (2018 NY Slip Op 04370)





SM v Plainedge Union Free Sch. Dist.


2018 NY Slip Op 04370


Decided on June 13, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 13, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
JOHN M. LEVENTHAL
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON, JJ.


2016-05118
 (Index No. 14550/13)

[*1]SM, etc., et al., respondents,
v Plainedge Union Free School District, appellant.


Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger, Uniondale, NY (Christine Gasser of counsel), for appellant.
Law Offices of Patrick J. Sullivan, PLLC, Mineola, NY, for respondents.



DECISION & ORDER
In an action to recover damages for personal injuries, etc., the defendant appeals from an order of the Supreme Court, Nassau County (Denise L. Sher, J.), dated March 24, 2016. The order denied the defendant's motion for summary judgment dismissing the complaint and granted the plaintiffs' cross motion to impose sanctions against the defendant for spoliation of evidence.
ORDERED that the order is affirmed, with costs.
During a lunch recess on October 2, 2012, the plaintiff SM (hereinafter the infant plaintiff) allegedly was injured when he fell from monkey bars on a school playground. At the time of the accident, the infant plaintiff was a fifth-grade student at Charles E. Schwarting Elementary School (hereinafter the school), which is under the control of the defendant, Plainedge Union Free School District. The infant plaintiff, by his mother and natural guardian, Mary MacDougall, and Mary MacDougall, individually (hereinafter together the plaintiffs), commenced this action against the defendant to recover damages for negligent supervision.
According to the deposition testimony of the infant plaintiff, in the moments leading up to the accident and at the time of the accident, the infant plaintiff was engaged in what was undisputedly dangerous and prohibited activity. Specifically, he had climbed on top of the monkey bars and, from the top of the bars, he did a cartwheel into a handstand followed by a swinging dismount to the ground. After successfully completing this sequence of maneuvers, the infant plaintiff made a second attempt. On his second attempt, he lost his balance while in the handstand position and was injured when he fell to the ground. According to the infant plaintiff, although school lunch aides were present and providing supervision, none of the lunch aides intervened to stop him from playing on top of the monkey bars.
According to the deposition testimony of a school lunch aide, on the day of the accident, she and two other aides were present during recess, but neither she nor any of the other aides observed any part of the infant plaintiff's conduct. The lunch aide acknowledged, however, that had she seen what the infant plaintiff was doing, she "absolutely" would have intervened and she also "probably" would have sent him to the principal's office. In addition, the lunch aide testified that the infant plaintiff was a known "trickster" when on the playground, who had been reprimanded in the past for inappropriate use of playground equipment. She believed that, although the infant plaintiff's past behavior did not require one-on-one supervision, he should be monitored "a little bit" and given more attention than other students.
According to the deposition testimony of the school principal, given the nature of the accident, an incident report was completed by the school nurse, notice was given to the school's insurance company, and a report was made directly to the "central office." In addition, immediately following the accident, the school principal reviewed surveillance footage to determine the cause of the accident.
The defendant preserved 24 seconds of surveillance footage from the day of the accident. The preserved footage shows what was alleged to have been the infant plaintiff's second attempt at the cartwheel-to-handstand maneuver. He is seen on top of the monkey bars for no more than six seconds before his fall. During the course of this litigation, the plaintiffs made a discovery demand for, inter alia, "the entire footage of the recess period leading up to the time of the accident." In response, the defendant stated that it had saved only that portion of the video which depicted the "actual accident," and claimed that because it had no prior notice of the need to preserve any additional footage. In keeping with the defendant's usual custom and practice, the remaining footage was automatically erased 30 days after the accident.
Following the completion of discovery, the defendant moved for summary judgment dismissing the complaint and the plaintiffs cross-moved to impose sanctions against the defendant for the destruction of surveillance footage. The Supreme Court denied the defendant's motion and, in granting the plaintiffs' cross motion, directed that a negative inference charge be issued at trial against the defendant with respect to the unavailable surveillance footage. The defendant appeals.
The Supreme Court properly denied the defendant's motion for summary judgment dismissing the complaint. While schools are not insurers of safety, as they cannot reasonably be expected to continuously supervise and control all movements and activities of students, they are nonetheless under a duty to provide adequate supervision to those in their charge, and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision (see Mirand v City of New York, 84 NY2d 44, 49). In carrying out their duty, schools are obligated to exercise such care as a parent of ordinary prudence would observe in comparable circumstances (see id. at 49; Khosrova v Hampton Bays Union Free Sch. Dist., 99 AD3d 669, 670).
"Whether a student is properly supervised depends largely on the circumstances attending the event'" (Mei Kay Chan v City of Yonkers, 34 AD3d 540, 541, quoting Farrukh v Board of Educ. of City of N.Y., 227 AD2d 440, 441). Generally, the adequacy of a school's supervision of its students and whether inadequate supervision was the proximate cause of a student's injury are triable issues of fact (see DiGiacomo v Town of Babylon, 124 AD3d 828, 829; Palmer v City of New York, 109 AD3d 526, 527; Braunstein v Half Hollow Hills Cent. Sch. Dist., 104 AD3d 893, 894). However, "[w]here an accident occurs in so short a span of time that even the most intense supervision could not have prevented it, any lack of supervision is not the proximate cause of the injury and summary judgment in favor of the [defendant school district] is warranted" (Convey v City of Rye School Dist., 271 AD2d 154, 160; see Luciano v Our Lady of Sorrows School, 79 AD3d 705).
Here, the defendant failed to establish, prima facie, that it provided adequate supervision to the infant plaintiff, or that the lack of adequate supervision was not a proximate cause of the infant plaintiff's injury (see DiGiacomo v Town of Babylon, 124 AD3d at 829; Osmanzai v Sports & Arts in Schools Found., Inc., 116 AD3d 937, 938; Palmer v City of New York, 109 AD3d at 527; Braunstein v Half Hollow Hills Cent. Sch. Dist., 104 AD3d at 894). In support of its motion for summary judgment, the defendant relied upon, inter alia, the deposition testimony of the infant plaintiff, the deposition testimony of the school lunch aide, and the preserved surveillance footage. Viewing this evidence in the light most favorable to the plaintiffs (see Vega v Restani Constr. Corp., 18 NY3d 499, 503), there are triable issues of fact as to whether the infant plaintiff's alleged prior conduct and his reputation warranted more appropriate supervision, or heightened supervision, and, if so, whether such supervision would have prevented the accident (see DiGiacomo v Town of Babylon, 124 AD3d at 829; Oliverio v Lawrence Pub. Schools, 23 AD3d 633, 635). The evidence submitted in support of the defendant's motion for summary judgment did not establish, prima facie, that the accident occurred in so short a span of time that even the most intense supervision could not have prevented it (see DiGiacomo v Town of Babylon, 124 AD3d at 829; Oliverio v Lawrence Pub. Schools, 23 AD3d at 635; Douglas v John Hus Moravian Church of Brooklyn, Inc., 8 AD3d 327, 328; cf. Simonides v Eastchester Union Free Sch. Dist., 140 AD3d 728, 730; Reardon v Carle Place Union Free School Dist., 27 AD3d 635, 636). Additionally, the doctrine of primary assumption of [*2]risk is not an applicable defense to the facts herein (see Trupia v Lake George Cent. School Dist., 14 NY3d 392; Duffy v Long Beach City Sch. Dist., 134 AD3d 761, 763-764). Since the defendant failed to establish its prima facie entitlement to judgment as a matter of law, the Supreme Court properly denied the defendant's motion for summary judgment dismissing the complaint, regardless of the sufficiency of the plaintiffs' papers in opposition (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
The Supreme Court also properly granted the plaintiffs' cross motion to impose sanctions against the defendant for spoliation of evidence. "Under the common-law doctrine of spoliation, when a party negligently loses or intentionally destroys key evidence, the responsible party may be sanctioned under CPLR 3126" (Holland v W.M. Realty Mgt., Inc., 64 AD3d 627, 629; see Samaroo v Bogopa Serv. Corp., 106 AD3d 713, 713-714). " [T]he Supreme Court has broad discretion in determining what, if any, sanction should be imposed for spoliation of evidence' and may, under appropriate circumstances, impose a sanction even if the destruction occurred through negligence rather than wilfulness, and even if the evidence was destroyed before the spoliator became a party, provided the spoliator was on notice that the evidence might be needed for future ligation'" (Doviak v Finkelstein & Partners, LLP, 137 AD3d 843, 846, quoting Biniachvili v Yeshivat Shaare Torah, Inc., 120 AD3d 605, 606).
"A party that seeks sanctions for spoliation of evidence must show that the party having control over the evidence possessed an obligation to preserve it at the time of its destruction, that the evidence was destroyed with a culpable state of mind, and that the destroyed evidence was relevant to the party's claim or defense such that the trier of fact could find that the evidence would support that claim or defense" (Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d 543, 547 [internal quotation marks omitted]; see Golan v North Shore-Long Is. Jewish Health Sys., Inc., 147 AD3d 1031, 1032). "A culpable state of mind' for purposes of a spoliation sanction includes ordinary negligence" (VOOM HD Holdings L.L.C. v EchoStar Satellite LLC, 93 AD3d 33, 45; see Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d at 554; Golan v North Shore-Long Is. Jewish Health Sys., Inc., 147 AD3d at 1032). Where evidence was intentionally or wilfully destroyed, its relevance is presumed (see Pegasus Aviation I, Inc. v Varig Logistica S.A., 2 NY3d at 547; Golan v North Shore-Long Is. Jewish Health Sys., Inc., 147 AD3d at 1032). However, where evidence was negligently destroyed, the party seeking sanctions must establish that the destroyed evidence was relevant to the party's claim or defense (see Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d at 547-548; Golan v North Shore-Long Is. Jewish Health Sys., Inc., 147 AD3d at 1032).
Here, the plaintiffs demonstrated that the defendant had an obligation to preserve surveillance footage of the moments leading up to the infant plaintiff's accident at the time of its destruction, but negligently failed to do so. Given the nature of the infant plaintiff's injuries and the immediate documentation and investigation into the cause of the accident by the defendant's employees, the defendant was clearly on notice of possible litigation and, thus, under an obligation to preserve any evidence that might be needed for future litigation (see Esarko v Associated Supermarket, 155 AD3d 826; Maiorano v JP Morgan Chase & Co, 124 AD3d 536, 536; Suazo v Linden Plaza Assoc., L.P., 102 AD3d 570, 571; Barone v City of New York, 52 AD3d 630, 631). The defendant failed to meet this obligation. The defendant acted negligently in unilaterally deciding to preserve only 24 seconds of footage and passively permitting the destruction of the remaining footage, portions of which were undisputedly relevant to the plaintiffs' case.
Under the circumstances of this case, the Supreme Court providently exercised its discretion in imposing a sanction of a negative inference charge against the defendant at trial with respect to the unavailable surveillance footage (see Smith v Cunningham, 154 AD3d 681, 683; Peters v Hernandez, 142 AD3d 980, 981; Morales v City of New York, 130 AD3d 792, 795; Murillo v Porteus, 108 AD3d 750, 752-753; Guiliano v 666 Old Country Rd. LLC, 100 AD3d 960, 962; Mendez v La Guacatala, Inc., 95 AD3d 1084, 1085-1086; Denoyelles v Gallagher, 40 AD3d 1027).
SCHEINKMAN, P.J., LEVENTHAL, MILLER and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court