Brenker v S.R.N. Holding Corp. (2024 NY Slip Op 50160(U))

[*1]

Brenker v S.R.N. Holding Corp.

2024 NY Slip Op 50160(U)

Decided on February 20, 2024

Supreme Court, Richmond County

Castorina, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 20, 2024
Supreme Court, Richmond County

Joel Brenker and YVONNE BRENKER, Plaintiff,

against
S.R.N. Holding Corp. and FOX OF STATEN ISLAND INC., Defendant.

Index No. 150198/2022

Attorney for the Plaintiff
Salvatore Aspromonte, Esq. 
Dansker & Aspromonte Associates 
30 Vesey Street 16th Floor
New York, NY 10007 
Phone: (212) 732-2929 
E-mail: sal&commat;dandalaw.com
Attorney for the Defendant
Tara-Yvonne Sheppard, Esq.
STRIKOWSKY, DRACHMAN & SHAPIRO 
111 Broadway, Suite 1103
New York, NY 10006 
Phone: (212) 970-7111 
E-mail: tys&commat;strikowsky.com

Ronald Castorina, Jr., J.

The following e-filed documents listed on NYSCEF (Motion #001) numbered 43-60, 64-66 were read on this motion.
Upon the foregoing documents, and after oral argument conducted on February 15, 2024, on Motion Sequence #001, Motion Sequence #001 is resolved and therefore, it is hereby,
ORDERED, that Defendants' request pursuant to CPLR § 3126, to strike Plaintiffs' complaint for spoliation of critical evidence and/or precluding the plaintiffs from offering evidence as to the cause of their damages is DENIED; and it is further,
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
Memorandum Decision
I. Procedural History
On or about February 2, 2022, Plaintiff commenced this negligence action against S.R.M. Holding Corp., to recover for personal injuries sustained on December 2, 2020, from an alleged trip-and-fall by the Plaintiff on what he purported to be a defective portion of the sidewalk at 2391 Richmond Avenue, Staten Island, New York. (NY St Cts Filing [NYSCEF] Doc No. 47). Issue was joined by Defendant, S.R.M Holding Corp., on or about June 2, 2022, by the service of its Answer. (NY St Cts Filing [NYSCEF] Doc No. 48).
On or about June 21, 2022, Plaintiff filed a Supplemental Summons and Amended Complaint adding Fox of Staten Island Inc., as a Defendant. (NY St Cts Filing [NYSCEF] Doc No. 49). Defendants S.R.M Holding Corp. and Fox of Staten Island Inc., served their Answer to the amended complaint on or about September 30, 2022. (NY St Cts Filing [NYSCEF] Doc No. 51). On February 17, 2023, parties' counsel executed a stipulation adding in plaintiff-spouse, Yvonne Brenker, which was so-ordered by Hon. Castorina, Jr. (NY St Cts Filing [NYSCEF] Doc No. 52). On that date, plaintiff also filed a Second Amended Summons and Complaint adding in plaintiff-spouse, Yvonne Brenker and a second cause of action alleging loss of services and loss of consortium on behalf of plaintiff-spouse. (NY St Cts Filing [NYSCEF] Doc No. 53).
Defendants served their Answer to the second amended complaint on or about March 27, 2023. (NY St Cts Filing [NYSCEF] Doc No. 54). Plaintiff served a Verified Bill of Particulars on or about November 14, 2022. (NY St Cts Filing [NYSCEF] Doc No. 50).
On January 26, 2024, Defendants filed Motion Sequence No. 001 by Notice of Motion seeking (a) pursuant to CPLR § 3126, to strike Plaintiffs' complaint for spoliation of critical evidence and/or precluding the plaintiffs from offering evidence as to the cause of their damages; and (b) for such other and further relief as the Court may deem just, proper, and equitable.
Plaintiffs filed opposition on February 14, 2024. Defendants filed reply on February 15, 2024. Oral argument was completed on February 15, 2024.
II. Facts
Plaintiff Joel Brenker alleges that on December 2, 2020, he was wearing sneakers when he fell over a broken section of sidewalk in front of 2391 Richmond Avenue in Staten Island and cut his right foot. (NY St Cts Filing [NYSCEF] Doc No. 65). Plaintiff contends in his affidavit that he contracted an infection in his right foot after this fall and ultimately required a below the knee amputation of his right leg in June of 2021. (see id). Plaintiff further contends that before he first contacted his attorneys and at some point, during the treatment of his infection, the sneakers he was wearing at the time of the incident were thrown away. (see id).
Plaintiff believes his wife, Yvonne Brenker, disposed of the sneakers approximately two months after the accident and asserts that no one told us that we should not throw away the sneakers. (see id). Plaintiff further asserts that "I had no idea that anyone would ever want to examine them [the sneakers]." (see id).
On April 17, 2023, Plaintiff Joel Brenker testified that on December 2, 2020, he was walking from Nome Avenue onto Richmond and walked onto a sidewalk approaching a [*2]shopping center containing a PC Richards store. (NY St Cts Filing [NYSCEF] Doc No. 55 at pages 22-23). He claimed his right foot tripped into a hole at the subject location. (see id at page 31).
Plaintiff testified:
Q. You're standing waiting for your son, what, if any, part of your body hurt?
A. My ribs. My foot.
Q. Which foot?
A. My ribs hurt a lot more.
Q. And you said your foot?
A. Yeah.
Q. Your right foot or your left foot?
A. Right foot.
Q. Were you bleeding from any part of your body?
A. I didn't know at that point.
Q. So at that point you didn't know if you were bleeding?
A. No.
Q. Did there come a time that you realized you were bleeding from some part of your body?
A. Yes.
Q. When was that?
A. When I got home.
Q. Where were you bleeding from?
A. Right side of my foot.
Q. Describe for me the area of your foot where you were bleeding and what that area looked like?
A. It was a cut about maybe smaller than a dime and that is where it was bleeding from.
Q. Was this on the sole of your foot, on the side, on the top, describe for me where it was?
A. On the side.
Q. After you fell and before Chris Fama picked you up, did you notice if there was anything sharp or any type of debris that was in the area where your right foot was?
A. No.
Q. Once you got home and you noticed the blood on your right foot, what was the condition of your sneaker?
A. It had a gash in it.
Q. Was the gash a tear, did it look like something sharp had ripped it, or something else?
A. It looked like something punctured it.
Q. How big of a gash was it?
A. About the size of a quarter, maybe.
Q. Was it a hole, was it a straight line, or something else?
A. I couldn't tell you. I have no idea. (see id at pages 44-46).
On May 12, 2023, Plaintiff Joel Brenker further testified:
Q. When you got home, what did you do?
A. Took my sneaker off, because I saw blood on the side of the sneaker, like at the [*3]bottom, like right at the side where the sea is.
Q. Where the sole meets the top of the sneaker or somewhere else?
A. It's right like where the sole meets the bottom of the sneaker. Like the sole goes on that little slash that is there.
Q. Okay.
A. I mean, they were mesh sneakers; leather, mesh, whatever.
Q. Did you have socks on that day?
A. Yes.
Q. When you took your sneaker off, what did you observe?
A. I couldn't really see it. It was like a really little cut, like the size of a dime.
Q. Was it round like a dime? Was it a straight line or something else?
A. It was roundish, but I couldn't tell. I can't tell you that. (NY St Cts Filing [NYSCEF] Doc No. 56 at pages 22-23).
On April 17, 2023, Plaintiff Joel Brenker was questioned regarding the whereabouts of the sneakers worn by him on the day of the incident:
Q. Do you still have those sneakers?
A. No.
Q. What happened to them?
A. I think my wife threw them out a couple of months later.
Q. Why?
A. They had blood on them and plus it had a tear.
Q. Where was the tear?
A. On the right side bottom of the sneaker. Right before the sole. It was like a gouge more than a tear.
Q. At any time prior to your wife disposing of the sneakers were you ever advised to keep those sneakers?
A. No. (NY St Cts Filing [NYSCEF] Doc No. 55 at page 16).
On May 17, 2023, Plaintiff Yvonne Brenker testified:
Q. Do you think you still have those sneakers in the house?
A. Absolutely not.
Q. Okay. who got rid of the sneakers?
A. I can't tell you. I don't remember.
Q. Okay. Do you recall when it was that someone threw out the sneakers?
A. No.
Q. Okay. Do you recall if it was before your husband sought medical treatment?
A. I don't remember. That was so long ago.
Q. Did anyone direct you to keep those sneakers?
A. No.
Q. Did you take a look at the sneakers after the incident?
A. Honesty, I don't remember.
Q. I'm not asking for any conversations with any attorneys, but do you recall when you would have retained an attorney with respect to your husband, the incident on December 2, 2020?
A. I'm sorry. I don't follow that question.
Q. Do you recall when it was that you first spoke to an attorney with respect to the incident on December 2nd of 2020? I don't want to know what was said, I just want to know when the first time is you spoke to an attorney about it?
A. I didn't retain him, Joel did.
Q. Okay. Do you know when Joel first spoke to an attorney about it?
A. No, I don't. (NY St Cts Filing [NYSCEF] Doc No. 59 at pages 34-36).
There are no photographs or videos depicting the incident or the Plaintiff's sneaker from the date of the incident. (NY St Cts Filing [NYSCEF] Doc No. 44.
III. Discussion
CPLR § 3126 provides:
If any party, or a person who at the time a deposition is taken or an examination or inspection is made is an officer, director, member, employee or agent of a party or otherwise under a party's control, refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed pursuant to this article, the court may make such orders with regard to the failure or refusal as are just, among them:
1. an order that the issues to which the information is relevant shall be deemed resolved for purposes of the action in accordance with the claims of the party obtaining the order; or
2. an order prohibiting the disobedient party from supporting or opposing designated claims or defenses, from producing in evidence designated things or items of testimony, or from introducing any evidence of the physical, mental or blood condition sought to be determined, or from using certain witnesses; or
3. an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party.
"Under the common-law doctrine of spoliation, a party may be sanctioned where it negligently loses or intentionally destroys key evidence" (see Morales v City of New York, 130 AD3d 792 [2d Dept 2015] citing CPLR § 3126; Neve v City of New York, 117 AD3d 1006 [2d Dept 2014]; Samaroo v Bogopa Serv. Corp., 106 AD3d 713 [2d Dept 2013]; Rodman v Ardsley Radiology, P.C., 103 AD3d 871 [2d Dept 2013]).
"The nature and severity of the sanction depends upon a number of factors, including, but not limited to, the knowledge and intent of the spoliator, the existence of proof of an explanation for the loss of the evidence, and the degree of prejudice to the opposing party" (see id quoting Samaroo v Bogopa Serv. Corp., 106 AD3d 713 [2d Dept 2013]).
"The party requesting sanctions for spoilation has the burden of demonstrating that a litigant intentionally or negligently disposed of critical evidence, and 'fatally compromised its ability to'" prove its claim or defense (see id quoting Utica Mut. Ins. Co. v Berkoski Oil Co., 58 AD3d 717 [2d Dept 2009]; Lawson v Aspen Ford, Inc., 15 AD3d 628 [2d Dept 2005]).
"Striking a pleading is a drastic sanction, and in the absence of willful or contumacious conduct, courts will consider the prejudice that resulted from the spoliation to determine whether [*4]such drastic relief is necessary as a matter of fundamental fairness" (see M. M. v Macerich Prop. Mgt. Co., LLC, 219 AD3d 471 quoting S.W. v Catskill Regional Med. Ctr., 211 AD3d 890 [2d Dept 2022]).
"[A] less severe sanction or no sanction is appropriate where the missing evidence does not deprive the moving party of the ability to establish his or her case" (see id quoting N. H. R. v Deer Park Union Free Sch. Dist., 180 AD3d 823 [2d Dept 2020]). "The Supreme Court has broad discretion in determining the appropriate sanction, if any" (see id quoting S.W. v Catskill Regional Med. Ctr., 211 AD3d 890 [2d Dept 2022]).
In Iannucci v Rose, 8 AD3d 437 [2d Dept 2004], the Court held that the spoliation sanction for throwing out a ladder five days after the accident was inappropriate, since there was no evidence that the party acted willfully, contumaciously or in bad faith and there was no proof that the loss deprived the plaintiff of the means to prove his case.
"A party that seeks sanctions for spoliation of evidence must show that the party having control over the evidence possessed an obligation to preserve it at the time of its destruction, that the evidence was destroyed with a culpable state of mind, and that the destroyed evidence was relevant to the party's claim or defense such that the trier of fact could find that the evidence would support that claim or defense" (see Aponte v Clove Lakes Health Care & Rehabilitation Ctr., Inc., 153 AD3d 593 quoting Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d 543 [2015] citing Golan v North Shore-Long Is. Jewish Health Sys., Inc., 147 AD3d 1031 [2d Dept 2017]).
The facts in this matter are distinct from the facts in Hernstat v Anthony's Windows on the Lake, Inc., 162 AD3d 751 [2d Dept 2018], which involved the Plaintiff wearing high heel shoes that Defendant alleged to have caused or contributed to her fall on an interior staircase. Here the alleged fall occurred outside in an area accessible to the public. The evidence presented by the Defendants does not support their claim that Plaintiffs sneakers are critical evidence in their defense.
The facts in this case illustrate that Plaintiffs threw away the subject sneakers before they consulted with or hired lawyer; before there was a lawsuit; and before they knew they should retain the bloody sock and bloody and torn sneaker. The Defendants failed to demonstrate that the Plaintiffs' action of throwing out the bloody sock and sneakers was an intentional attempt to hide or destroy evidence. (see Popfinger v. Terminix Int'l Co. Ltd. Pshp., 251 AD2d 564 [2d Dept 1998] citing Kirkland v New York City Hous. Auth., 236 AD2d 170 [1st 1997]). Plaintiffs were not on notice that the sneakers might be evidence in a future litigation when they threw them out. It is also open to debate depending on the level of sophistication of the party whether it is common knowledge within the public that they should retain their shoes after an accident.
The evidence presented by the Defendants fails to satisfy the burden of demonstrating that a Plaintiff intentionally or negligently disposed of critical evidence, and fatally compromised the Defendants ability to defend the action. (see Utica Mut. Ins. Co. v Berkoski Oil Co., 58 AD3d 717 [2d Dept 2009] quoting Lawson v Aspen Ford, Inc., 15 AD3d 628 [2d Dept 2005]; citing Kirschen v. Marino, 16 AD3d 555 [2d Dept 2005]). Here, there has been no showing that the sneakers were critical evidence or that the lost sneakers fatally compromise Defendants' ability to defend the action.
Defendants have provided no evidence that they are prevented from arguing at the time of trial that Plaintiffs' version of the accident and his injuries are not consistent with reality, common sense or medical evidence. Accordingly, it cannot be said that Defendants' ability to [*5]defend this case has been "fatally compromised" (see id).
Accordingly, Defendants' request pursuant to CPLR § 3126, to strike Plaintiffs' complaint for spoliation of critical evidence and/or precluding the plaintiffs from offering evidence as to the cause of their damages is DENIED.
IV. Decretal Paragraphs
It is hereby ORDERED, that Defendants' request pursuant to CPLR § 3126, to strike Plaintiffs' complaint for spoliation of critical evidence and/or precluding the plaintiffs from offering evidence as to the cause of their damages is DENIED; and it is further,
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
The foregoing shall constitute the Decision and Order of the Court. 
Dated: February 20, 2024
Staten Island, New York
E N T E R,
HON. RONALD CASTORINA, JR.
JUSTICE OF THE SUPREME COURT